The Chicago Bar Association, an Illinois Corpora-
tion Not for Profit, Curtis F. Prangley, et al.,
Plaintiffs-Appellants-Cross-Appellees, v. Quin-
lan and Tyson, Inc., an Illinois Corporation, De-
fendant-Appellee-Cross-Appellant.

### Gen. No. 49,127.

First District, First Division.

November 30, 1964.

J. R. Christianson, William S. Kaplan and Richard L. Kahn, of Chicago, for Chicago Bar Association, et al., appellants; Richard B. Allen, of Chicago, for amicus curiae, Illinois State Bar Association.

Cummings & Wyman, of Chicago (Austin L. Wyman and Kurt W. Teuthorn, of counsel), for Quinlan and Tyson, Inc., appellee. Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Vernon M. Welsh and Frank L. Winter, of counsel), for amici curiae, Chicago Real Estate Board, the Evanston-North Shore Board of Realtors and the Illinois Association of Real Estate Boards.

MR. JUSTICE BURMAN delivered the opinion of the court.

The Chicago Bar Association, a not-for-profit Illinois corporation and seven duly licensed attorneys at law, members of the Association's Committee on Unauthorized Practice of Law, seek to enjoin the defendant, Quinlan and Tyson, Inc., a real estate brokerage firm incorporated under the laws of Il-

linois, from engaging in activities alleged to be the unauthorized practice of law.

In substance the plaintiff's complaint charged, that among other things, the following services rendered by defendant constitute such unauthorized practice: preparation of offers to purchase and contracts for the purchase or sale of real estate; preparation of deeds of conveyance; providing legal advice and supervision concerning the closing of real estate transactions; preparation of instruments necessary to clear title to real estate; and the examination of title papers and giving of advice concerning the status and validity of title. The complaint also charged, that the defendant's real estate management and mortgage business involved the unauthorized practice of law, but the plaintiffs subsequently withdrew these charges. The defendant's answer, as amended, admitted that it performed all the services mentioned except the giving of legal advice, but denied that the services constituted the practice of law.

Requests by the Chicago Real Estate Board, the Evanston-North Shore Board of Realtors, the Building Managers Association of Chicago and the Illinois Association of Real Estate Boards to intervene were denied by the chancellor, but permission was granted to them to appear as amici curiae. In this court we granted leave to the Illinois State Bar Association to appear as amicus curiae and to file briefs in support of the action commenced by the Chicago Bar Association, and we also granted leave to the Chicago Real Estate Board, the Evanston-North Shore Board of Realtors and the Illinois Association of Real Estate Boards to appear as amici curiae and briefs were filed in their behalf.

In the trial court the matter was referred to a James C. Leaton, Master in Chancery, who heard

testimony covering 1,600 pages and received almost 200 exhibits. The Master found and concluded that the completion of the contract of sale forms, including insertions, deletions and riders, was a service for others which set forth the legal rights and liabilities of the parties and required legal skill and knowledge. The Master also found that the completion of forms by defendant, subsequent to the execution of contracts of sale, such as escrow agreements, installment contracts, mortgages and deeds, as shown by the exhibits, was also a service for others which set the legal rights and liabilities of the parties and affected title to real estate. The Master further concluded that all of the services mentioned were not in any legal sense incidental to the defendant's business as a real estate broker and that they constituted unauthorized practice of law. Finally the Master recommended that a decree be granted, permanently restraining and enjoining the defendant, its agents and employees from giving legal counsel and advice, rendering legal opinions and preparing, drafting or construing certain legal documents connected with the purchase and sale of real estate.

The Chancellor affirmed the findings and conclusions of the Master except with respect to preparation of the initial sales contract. The decree of the Chancellor provides: "As a necessary incident to the transaction of its real estate brokerage business the Defendant when it is engaged as a broker by either the seller or the buyer of real estate may prepare offers to purchase or sell and contracts to purchase or sell, and procure signatures thereto, provided" (and we summarize)

 (a) The contracts to be filled in are contracts customarily used in the defendant's community;

(b) No additions are made in the form except those commonly made in supplying factual and business details pertinent to the transaction; no deletions are made in the form except those involving the elimination of factual and business details not pertinent to the transaction.

The decree further recited that though the filling in of the initial contract form as indicated above does not constitute the practice of law, the defendant "may not undertake to explain to its principal or other third parties the legal effect of the provisions in the form" nor "advise its principal or other third parties in the matter of choices which may create, enhance or diminish gain or loss to the buyer or seller" including but not limited to advice concerning whether title should be taken individually, in trust, or in joint tenancy or whether the payments should be in installments.

The decree finally provided that after obtaining the signatures of the parties on the contract form, the defendant may not prepare subsequent documents in the real estate transaction because such preparation constitutes the practice of law.

The plaintiffs appeal from that part of the decree which permits the defendant to fill in the blanks of the initial contract and the defendant has cross-appealed from that part of the decree which prohibits it from preparing subsequent documents and from explaining to its principals the effect of the provisions in any form of documents used in connection with property transfer.

The briefs submitted here by the parties and by amici curiae have been very helpful to the court. The massive amount of work which was obviously devoted to the briefs caused every issue to be

brought before us in a clear and well argued manner.

Plaintiffs admit that the defendant is a reputable real estate broker. They make no charge of lack of technical competence, overreaching, negligence, or practice of law in any field other than the preparation of documents required in real estate sales, in which the defendant acts as a broker, and where it charges no fee other than the brokerage commission to which it is entitled under its contract of employment. Hence the issue for determination is whether the defendant is engaged in the unauthorized practice of law when, in the course of its activities as a real estate broker, it prepares for others, without compensation, any or all of the documents in question.

 The power to determine who may and who may not be permitted to practice law in this state is vested exclusively in the judiciary. The question was squarely presented in the case of In re Day, 181 Ill 73, 54 NE 646 (1899) in which the Supreme Court said:

> That power [to pass upon the learning and fitness to practice law] belongs to the court by by virtue of its being a court of justice and one of the departments of State into which, under the constitution, the power falls. Without such power, by which the courts can protect themselves against ignorance and want of skill, they cannot properly administer justice. (181 Ill at 94.)

This principle has been consistently followed in subsequent cases on unauthorized practice and is a basic principle of our jurisprudence. People v. Peoples Stock Yards State Bank, 344 Ill 462, 176 NE 901 (1931); People v. Chicago Motor Club, 362 Ill

50, 199 NE 1 (1935); People v. Goodman, 366 Ill 346, 8 NE2d 941 (1937); People v. Schafer, 404 Ill 45, 87 NE2d 773 (1949). The power to regulate those whom the court has sanctioned includes the duty to punish those who seek to practice law without the authorization of the judicial department. People v. Peoples Stock Yards State Bank, 344 Ill 462, 176 NE 901 (1931). The power of the court to inquire into the unauthorized practice of law is not limited to those acts which are performed before it, but extends to such unauthorized conduct and services of legal nature which are performed outside of the courts, including the giving of advice, counseling, drafting of legal documents and participation in transactions which are outside the scope of the actual litigation of a cause in the courts. People ex rel. Chicago Bar Ass'n v. Tinkoff, 399 Ill 282, 77 NE2d 693 (1948).

██ The public interest must be the guiding principle for this court in deciding this case. The reason underlying this principle was well expressed in People v. Goodman, 366 Ill 346, 8 NE2d 941 (1937).

> In modern times the affairs of the people requiring the services of a lawyer have become more intricate and complex, demanding a corresponding increase in the standards of the profession through preliminary education and a lengthened and more diversified course of study by those who would engage in the practice. . . . These prerequisites are not for the purpose of creating a monopoly in the legal profession nor for its protection, but for the better security of the people against incompetency and dishonesty. (366 Ill at 350.)

Though the Goodman case involved a prosecution for the handling and adjusting of workmen's compensation claims before administrative bodies at a time when administrative law was not yet considered to be a matter of special legal competence, in a prosecution like the one at bar in which it is claimed that a corporation has attempted to enter a field which has been traditionally the domain of the lawyer, protection of the public interest is no less the prime consideration.

The defendant and these amici curiae have strongly contended that the preparation of these documents has long been done in the usual course of the broker's business and that it has been considered reasonably incident and practically necessary to the conduct of the real estate business. We cannot adopt this "incident to business" rule as a basis for decision here. Not only do we find no Illinois case among the exhaustive list cited here that adopts this rule, but also we think the rule is an evasion of the hard core principle of the public interest which must be the basis for deciding whether or not the defendant's actions constitute the practice of law. We see in this rule the same sterile formalism to which the amici curiae object with respect to a determination of this case on the basis of a definition of "the practice of law," which ignores the modern context and the public interest. Centering the decision of this case on a definition of what is incident to the defendant's business is merely the reverse of centering it on a definition of what is the practice of law. To take an approach to this case on either basis without considering where the public interest lies is equally objectionable.

In determining whether the actions of the defendant are such as require the knowledge and judgment of a lawyer and cannot, consistent with the public interest, be performed by a layman, we will largely limit our discussion to the drafting and filling in of blanks in the initial instrument in the real estate transaction, that is the real estate sale contract. We do this because, as we will indicate briefly at various points below, documents subsequent to the contract, which, while following as a result of the terms of the contract, do not require for their proper completion a degree of skill which is so materially different as to justify a different result.

In assessing the skill and competence required in initiating and completing the sale of real estate, we feel that no distinction can be made between filling in blanks in a preselected drafted legal form and the drafting of the entire instrument. Skill in drafting of an entire instrument lies in preparing a body of language which anticipates, as far as possible, all the requirements of the parties, thereby minimizing the areas of subsequent misunderstanding and dispute. The document must accurately reflect the agreement of the parties and fully define their rights and obligations. The use of a legal form should do no less. Hence even the legal form must be skillfully adapted to the transaction. Washington State Bar Ass'n v. Washington Ass'n of Realtors, 41 Wash2d 697, 251 P2d 619 (1952).

Since it is necessary to use legal knowledge and judgment in the selection and completion of a legal form, it is as if the party drafted the form himself. Both the drafting of legal documents and the filling in of preselected forms are equal tests to determine the legal skill and expertise required. No different result should be reached with respect to

documents in the real estate transaction which are subsequent to the sales contract. The Washington State Bar case, cited above, with respect to the sales contract, was directed to completion of form deeds as well as to the completion of form contracts. The documents used for clearing objections to title shown on title guarantee policies or the Torrens certificate and the closing documents, including primarily the deed, require for their preparation legal skill in interpreting the requirements of the contract terms and in fitting the passing of title and the completion of the transaction to the needs of the parties.

With these general considerations in mind, we turn to facts of the case at bar. The defendant, because it is a corporation, cannot under Illinois law (Ill Rev Stats 1963, c 32, §§ 411 and 412) be licensed to practice law. The defendant is engaged primarily in residential (noncommercial, nonindustrial) real estate sales in the suburbs north of Chicago with offices in Evanston, Winnetka and Glenview. It participates in about three hundred residential sales annually, the average selling price ranging between $40,000 and $50,000. The defendant employs fifty to sixty persons, of whom three are licensed real estate brokers and twenty-three are licensed real estate salesmen. Because the defendant's brokers and salesmen are members of the Evanston-North Shore Board of Realtors, the defendant is a party to the Board's multiple listing system under which real estate listings placed with one member are exchanged among all the members.

The defendant participates in real estate transactions as a listing broker (one whom the seller contacts in order to offer his property for sale) or as a procuring broker (one who obtains a buyer for the property) or as both listing and procuring bro-

ker. Defendant's salesmen are compensated by a share of the commission on the sale price which commission varies depending on whether the defendant is a listing or procuring broker or both.

There is evidence in the record indicating that, at least in the Chicago area, attorneys usually represent both parties in transactions involving $50,-000 or more. Furthermore, the defendant produced evidence that in real estate transactions in which lawyers do participate, they do not do so in a substantial proportion of cases until after the initial contract is signed. In most of the defendant's transactions as indicated by a substantial random sample of its files at least one attorney was present at some stage of the transaction. The defendant generally encourages the use of lawyers and it insists that one or the other party have a lawyer in some cases.

Where the defendant is both a listing and procuring broker and where no attorney is involved in the transaction, the defendant selects and prepares all the documents in the transaction, including the offer, agreement or contract to purchase, articles of agreement for warranty deed, certain affidavits used for title clearance purposes, affidavits of title, bills of sale of personal property, various types of deeds; assignments of insurance policies and proration statements.

For the contract to purchase, the first and most important single document in the transaction, the defendant primarily uses a form approved by the Evanston-North Shore Board of Realtors. The form is filled in by the defendant's salesmen in cooperation with the defendant's assistant secretary, its office sales managers or its general sales manager. Salesmen have been instructed not to submit a contract to the parties for signature until it has been

double checked by one of the three persons mentioned. This last procedure is not followed where sales are consummated in emergency situations, that is when sales are made in the evenings, and on Sundays and holidays; in such cases the salesman merely checks with his superior for advice on preparation of the form and no rigorous double checking takes place before signature. The subsequent documents and steps of the transaction are handled by the defendant's assistant secretary and its general sales manager.

We agree with the Master that the completing by the defendant of the contract of sale form, as described in the evidence, including insertions, deletions and riders, "was a service for others which defined and set forth the legal rights and liabilities of the parties, and required legal skill and knowledge and more than ordinary business intelligence," and therefore constitutes the practice of law. We also agree with both the Master and the Chancellor that the completion of subsequent forms necessary to complete the sale are also services that constitute the practice of law.

There is no Illinois case which permits a real estate broker to prepare a form contract to purchase real estate or subsequent documents for others. People v. Schafer, 404 Ill 45, 87 NE2d 773 (1949), which has been given extended consideration in the briefs and is relied heavily upon by the plaintiff, is the only Illinois case directly applicable to the issue at bar. In that case the defendant, a licensed real estate broker, was found to be in contempt of court and fined on the charge that he was engaged in the unauthorized practice of law. Specifically it was charged and evidence was adduced to show that Schafer performed all of the following acts.

(a) Customarily engaging in the preparation of deeds, contracts and mortgages in real estate transactions in which he was the procuring agent and for which he received a broker's commission but made no other charge.

(b) Customarily preparing like instruments in cases where he was not the procuring agent and in which instances he made a charge.

(c) Advising Margaret Culp concerning the disposition of her estate and preparing deeds and other instruments in connection therewith for which he charged a fee.

Although he failed to object to the adverse findings and conclusions of the commissioner and was not represented by counsel on appeal, the Supreme Court made it clear that they had studied the record carefully. On appeal Schafer took a position similar to that taken by the defendant in the case at bar. He argued that because he was a real estate broker he had a lawful right to do any legal work in connection with real estate transactions, especially in the drawing of real estate contracts, deeds, mortgages, notes and the like. The Supreme Court responded to the argument in the following language.

With reference to preparing deeds, notes, mortgages and contracts in real-estate transactions, respondent seems to consider those acts as being more or less mechanical and routine requiring no legal knowledge or skill. Many titles are complex and complicated. They have grown more so from time to time and will not likely become less complex in the future. Those who prepare instruments which affect titles to real

400

estate have many points to consider. A transaction which at first seems simple may upon investigation be found to be quite involved. One who merely fills in certain blanks when other pertinent information should be elicited and considered is rendering little service but is acting in a manner calculated to produce trouble. When filling in blanks as directed he may not by that simple act be practicing law, but if he elicits the proper information and considers it and advises and acts thereon he would in all probability be practicing law. In other words, if his service does not amount to the practice of law it is without material value; but if it is of material value it would likely amount to the practice of law. The public should be protected from falling into the hands of one not skilled in the laws of conveyancing when seeking advice or service having to do with real-estate titles. (404 Ill at 53, 54.)

We are not persuaded by the argument that the Schafer case does not decide the issues presented here and does not set a precedent to be followed. Schafer, like the employees of the defendant here, was a licensed real estate broker. The evidence showed that he customarily prepared the same kinds of instruments in question here. Like the defendant here, Schafer made no charge other than his commission. Finally, we cannot consider as mere speculative dicta the extensive language of the court quoted above as urged by the defendant and amici curiae simply because in that case an additional issue was presented which is not found in the case at bar.

Nor do we believe that the authorities from other jurisdictions on which the defendant relies are ei-

ther applicable here or, where applicable, are persuasive on the issue at hand. There are two classes of cases cited by the defendant in support of its position. First, there are the cases which support the broker's right to fill in forms for substantially all the documents in the real estate transaction. Conway-Bogue Realty Inv. Co. v. Denver Bar Ass'n, 135 Colo 398, 312 P2d 998 (1957); Hulse v. Criger, 363 Mo 26, 247 SW2d 855 (1952); Ingham County Bar Ass'n v. Walter Neller Co., 342 Mich 214, 69 NW2d 713 (1955); State Bar of Michigan v. Kupris, 366 Mich 688, 116 NW2d 341 (1962); Cowern v. Nelson, 207 Minn 642, 290 NW 795 (1940); State v. Dinger, 14 Wis2d 193, 109 NW2d 685 (1961); State v. Indiana Real Estate Ass'n, Inc., 191 NE 2d 711 (Indiana 1963); Creekmore v. Izard, 236 Ark 558, 367 SW2d 419 (1963); In re Matthews, 58 Idaho 772, 79 P2d 535 (1938). Second, there are the cases which support the broker's right to fill in form real estate contracts or other initial documents, but deny him that right with respect to most subsequent documents in the transaction. Caneer v. Martin, 238 SW2d 828 (Texas 1951); Keyes Co. v. Dade County Bar Ass'n, 46 So2d 605 (Florida 1950); Gustafson v. Taylor, 138 Ohio St 392, 35 NE 2d 435 (1941); Washington State Bar Ass'n v. Washington Ass'n of Realtors, 41 Wash2d 697, 251 P2d 619 (1952); Commonwealth v. Jones & Robbins, Inc., 186 Va 30, 41 SE2d 720 (1947).

The Minnesota, Indiana, Wisconsin, Colorado and Arkansas cases do not appear to us to be instructive on the issue at bar. Although the question in each of these cases was whether a realtor was engaged in the unauthorized practice of law when he completed legal documents used in his customer's real estate transactions, there were determinative factors in each of the cases which are not present in

the instant case. In the Minnesota case, Cowern v. Nelson, 207 Minn 642, 290 NW 795 (1940), the court accepted, on the basis of comity, a statute defining unauthorized practice of law which specifically stated that it did not prohibit anyone, acting as broker for the parties to a sale of property, from drawing such papers as may be incident to the sale. There is no comparable legislative determination here.

In State v. Indiana Real Estate Ass'n, Inc., 191 NE2d 711 (Ind 1963), the State Bar Association had approved, under its agreement with the Real Estate Association, some of the forms involved in the case; other forms had been unilaterally promulgated by the Real Estate Association and though not agreed to or promulagted by the Bar, as it had promised to do, these other forms had never been objected to by the Bar. In the instant case, the organized bar has specifically declined to enter into the type of agreement involved in the Indiana case. In the Wisconsin case of State v. Dinger, 14 Wis2d 193, 109 NW 2d 685 (1961), the court appeared to be motivated by several factors not found in the present case. There the legislature had specifically approved and recommended for use certain forms of deeds, mortgages, land contracts, assignments, satisfactions and other conveyancing instruments. Brokers were allowed to use these standardized forms under a rule adopted by the state's Real Estate Broker's Board, pursuant to its statutory power to supervise, regulate and control the business of real estate brokers.

In both the Arkansas and Colorado cases, Creekmore v. Izard, 236 Ark 558, 367 SW2d 419 (1963) and Conway-Bogue Realty Inv. Co. v. Denver Bar Ass'n, 135 Colo 398, 312 P2d 998 (1957), it appears that there were a substantial number of areas of each state where no lawyers were available to aid

403

in the drafting of real estate documents. In Washington State Bar Ass'n v. Washington Ass'n of Realtors, 41 Wash2d 697, 251 P2d 619 (1953), the facts presented no issue on the question of filling in form contracts of sale.

We must agree, however, that the remaining cases cited by the defendant cannot be readily distinguished. Hulse v. Criger, 363 Mo 26, 247 SW2d 855 (1952); Ingham County Bar Ass'n v. Walter Neller Co., 342 Mich 214, 69 NW2d 713 (1955); State Bar of Michigan v. Kupris, 366 Mich 688, 116 NW 2d 341 (1962); Caneer v. Martin, 238 SW2d 828 (Texas 1951); Keyes Co. v. Dade County Bar Ass'n, 46 So2d 605 (Florida 1950); Gustafson v. Taylor, 138 Ohio St 392, 35 NE2d 435 (1941); Commonwealth v. Jones & Robbins, Inc., 186 Va 30, 41 SW 2d 720 (1947). Among this group of cases, the Missouri case of Hulse v. Criger, is the most articulate expression of the defendant's position. In fairness to the defendant and to the jurisprudence of these other states, we set out here at some length, the most pertinent language of the Missouri court.

> It is true that a real estate broker has earned his commission when he has found a purchaser ready, willing and able to take the property at the price and upon the terms fixed by the owner. However, we know as a practical matter that he does not get his money at that time; and often there are several written offers and counter offers which result in a contract before it can be said that a purchaser has been found. It is a matter of great importance to the broker to get an agreement in writing and then to close the transaction as promptly as possible, because as a matter of practice that is usually when he gets paid. Thus he is personally con-

404

cerned in the transaction and actually he is acting partly in his own interest in getting a contract signed and the deal closed. . . .

While as an agent he is required to reveal to his principal everything within his knowledge relating to the transaction and must not put himself in a position antagonistic to his interests, nevertheless, because of his personal interest in negotiating an agreement, he is not in the same completely disinterested position to give him advice about his rights and obligations as a lawyer should be. This, as well as lack of legal training, is an important reason why real estate brokers cannot be permitted to give legal advice to their customers.

However, this is also a practical reason why the completion of the contract is a part of the business of the real estate broker in the transaction; and it is usually to the interest of the seller he represents, as well as his own, to get a binding agreement completed promptly while the parties are together on its terms. Such agreements may be complicated and one or both of the parties may or should realize the need for a lawyer to prepare the contract rather than to use a standardized form; but more often they are simple enough so that such a form will suffice and the parties will wish to avoid further delay or expense by using them. So much real estate business is done in this way, without harmful results, that we do not think the public interest requires it to be changed. . . .

We think the guiding principle must be whether under the circumstances the preparation of the papers involved is the business being carried on

or whether this really is ancillary to and an essential part of another business. The simplicity or complexity of the forms, the nature and customs of the main business involved, the convenience to the public, and whether or not separate charges are made, all have a bearing upon the determination of this question. (247 SW2d at pages 860–862.)

We are not persuaded by the rationale of the Missouri case. We have already considered and rejected the "incident-to-business" factor on which the Missouri court relied in part and which the defendant urged here. In addition, the Missouri court decided and the defendant maintains here that brokers may draft or fill in legal documents for others in real estate transactions in which they are acting as brokers (1) when the documents involved are simple and not complex and (2) when the broker makes no specific charge, beyond his commission, for this service and (3) when it has been a long standing custom for brokers to carry out these services. We will consider each of these factors in turn.

In deciding this case, we find no assistance in the distinction which defendant draws between simple and complex instruments. As indicated by Mr. Justice Culbert Pound in the often quoted case, People v. Title Guar. & Trust Co., 227 NY 366, 125 NE 666 (1919), a document is simple or complex relative to who prepares it. There Justice Pound said:

I am unable to rest any satisfactory test on the distinction between simple and complex instruments. The most complex are simple to the skilled and the simplest often trouble the inexperienced. (125 NE at 670.)

Moreover, it is apparent that the simplicity or complexity of a document also depends on the social and legal context into which it is placed. Hence the preparation of a real estate sales contract is simple enough when the instrument is viewed merely as a memorandum of the agreement as to the terms of a transfer of ownership of real estate. But the contract cannot realistically be viewed in such isolation. The one who prepares the contract must keep in mind the law of marriage or divorce, probate, heirship, landlord and tenant, vendor and purchaser and many other branches of the law as they relate to each other and to the real estate sales contract. See In re Gore, 58 Ohio App 79, 15 NE2d 968 (1937). In Washington State Bar Ass'n v. Washington Ass'n of Realtors, 41 Wash2d 697, 251 P2d 619 (1952), the majority opinion noted, among several others, this decisive factor:

> . . . the fact that there is no simple legal instrument which necessarily can be differentiated from a complex one, so that its preparation by an unqualified person can be justified. (251 P2d at page 621.)

Mr. Justice Donworth's concurring opinion in the same case makes the same point.

> This transaction well illustrates the detrimental effect upon the public of permitting realtors to fill in blanks in printed legal forms on the theory that they are "simple contracts." From a practical standpoint, there is no such thing as a simple legal form in the hands of a layman. (251 P2d at page 626.)

The difficulties inherent in adopting the simple-complex distinction is made clear by the evidence in

the record. The business practice of the defendant indicates that whatever criteria of simplicity or complexity is used, it is subject to considerations of business expediency. Though contracts may be filled in by the defendant's licensed salesmen, they are considered complex enough to require supervision and checking by one of the defendant's licensed brokers before signature. Mr. Roland H. Peterson, a licensed broker and the defendant's vice president and general sales manager, testified that salesmen do not complete the contracts themselves because "most of it they don't know." None of the documents subsequent to the contract are considered simple enough to be entrusted for completion to the defendant's salesmen. Despite this apparent care to assure service by qualified persons with respect to the documents in the transaction, it appears that when business circumstances require, even salesmen, without the normal extensive supervision and with no checking, may complete the form contract and obtain the parties' signatures. Mr. Peterson testified that when "one of our salesmen who knows his business will call us and say 'I am drawing this, I am filling in this contract, this is what I am doing,' and he may be miles away from us . . . we allow him to fill it in and present it just so long as we know what is in it."

The defendant's conduct also tends to negate its argument that filling in the form is simple in any sense. As indicated by the testimony reviewed above at least a part of the forms are not so simple that the ordinary salesman can, in the defendant's view, adequately complete them. Furthermore Mr. Peterson admitted that while the defendant makes use of document forms, "there are never two contracts the same . . . there are never two buyers or sellers the same." He further testified that if the

agreement of the parties presents anything different than the routine simple provisions, he would tell them to obtain a lawyer. "Anything beyond a simple contract we will not draw." Also, "when we get into something that deals with restrictions on buildings or things that we don't have any knowledge, such as how title is to be taken, if it is being taken in a rather peculiar manner, we want to know that he has discussed that with an attorney. If he hasn't we tell him to get one."

The foregoing statements offer no assurance that where a lawyer's advice is required by the nature of the transaction that the defendant will be in a position to appreciate this necessity and so advise his principal. Though part of a legal education is designed to facilitate treatment of legal problems, an equally significant part is devoted to training in identification of legal problems. Because the defendant's brokers and salesmen lack such training, they are not only unequipped to give legal advice concerning the legal problems of which they may be aware (like those admitted to in the quoted material above), but also they are equally unequipped to determine when a legal problem exists at all. Without legal training serious legal problems may go unidentified by the salesman or broker, all to the detriment of the client. We take it that avoidance of this problem is one of the most important aspects of the protection of the public interest and hence is at the heart of the rule prohibiting the unauthorized practice of law.

■ The defendant also argues that the fact that he makes no charge specifically for these services beyond his commission is relevant in determining whether his acts constitute the practice of law. We hold that it is not. The character of the act and not whether compensation is or is not received is de-

terminative. The need for protection of the public interest is the same whether the broker's services are paid for or gratuitous. In both cases the opportunity for harm to the buyer or seller of real estate caused by inadequate advice of a lay broker or salesman is the same. Indeed there is authority in this state that free legal advice is nevertheless legal advice. In People v. Schafer, 404 Ill 45, 87 NE2d 773 (1949), the Supreme Court found the defendant's conduct constituted the practice of law even though when acting as procuring agent he made no charge for the preparation of deeds, mortgages and contracts. Some further authority for this proposition can be found in People v. Goodman, 366 Ill 346, 8 NE2d 941 (1937) and in People v. Peoples Stock Yards State Bank, 344 Ill 462, 176 NE 901 (1931). Finally the American Bar Association Committee on Unauthorized Practice considered this issue and concluded that:

> . . . the presence, or absence, of consideration is not a proper distinguishing element by which to determine the existence of unlawful practices. Whether or not it is present in no way limits the injury to the profession, or, what is more important, to the public. (60 American Bar Association Reports 521, at 533.)

The defendant relies on evidence of customs and business practices which show that throughout this state lawyers do not. participate in a substantial proportion of residential real estate transactions until after the initial contract is signed. Furthermore there is evidence that attorneys are present before signing the contract in most transactions involving over $50,000. The defendant does not argue that the existence of these customs and business practices gives it a prescriptive right to conduct the

activities in question or bars the plaintiff from complaining on the basis of some theory of laches. However, it does argue that such custom is strong evidence of where the public interest lies.

At the basis of the defendant's argument is an inference from the existence of the custom to its underlying cause which the defendant contends is the public approval of the custom as in its best interest. The defendant's experts, Messrs. Hennessy and Maley, support the inference at least as to the custom of signing the sales contract before a lawyer enters the transaction. The plaintiff's expert, Mr. Teitelbaum, testified, however, that the underlying cause of this custom is that people are willing to sign documents without consulting a lawyer because they believe the contract to be merely an offer and because they do not know that what they are signing is a definitive document which will lead to a binding contract.

There is nothing in this record to support the inference that lawyer participation before signing of only real estate sales contracts involving more than $50,000 arose out of the public's satisfaction with it. The defendant's experts mentioned above attribute the development of this custom to the fact that people who buy more expensive real estate generally have greater contacts with lawyers than those who buy less expensive real estate. Hence, those in the latter group are less aware of the importance of having a lawyer's advice in these transactions.

Even though we grant the existence of the customs and practices considered here, on all the evidence presented, we find no greater reason for believing that the customs arose because the public generally approved them, as consistent with the public interest, than for believing that it arose because of a lack of awareness by some people of the legal

411

consequences of their acts and of the advantages in retaining a lawyer.

The public interest, on which this case turns, includes, in addition to the need for protection of buyers and sellers of real estate, due consideration for the practical conduct of the brokerage business. The defendant argues that if it is unable to complete form contracts of sale, its right to a commission may be defeated. We conclude, however, that the state of the law on this subject is sufficient protection for the broker's interests even if, as we hold, he may not complete form contracts of sale or other documents for others in the real estate transaction.

 The general rule on the broker's commission was stated in Fox v. Ryan, 240 Ill 391, 88 NE 974 (1909).

> Where a broker is employed to sell property by the owner, if he produces a purchaser within the time limited by his authority who is ready, willing and able to purchase the property upon the terms proposed by the seller he is entitled to his commissions, even though the seller refuses to perform the contract on his part. In such a case, however, it is necessary for the broker to prove the readiness, willingness and ability of the purchaser to take the property on the terms proposed. (240 Ill at page 396.)

The broker becomes entitled to a commission from the seller at the time he finds a buyer ready, willing and able to enter into an agreement on the seller's terms. It is not essential in Illinois that an executed written agreement actually be entered into. The seller becomes bound at the moment that his terms have been met.

It is argued, however, that if the broker is not allowed to draft the sales contract the buyer will be able to change his mind because he is not himself bound until he signs the contract agreement. It is true that the buyer, after a preliminary meeting of the minds, may refuse to go through with the signing of a formal agreement after receiving advice from his lawyer. This may happen because the true legal import of the agreement may be made known to him. To some extent this is the inevitable result and motivating reason for our decision. We feel that there are people who enter into real estate contracts "blind," that is without the benefit of legal advice and only with the broker's alleged expertise. Thus if the broker must occasionally lose a commission due to a buyer's withdrawal after his legal position has been explained to him by a person who is a licensed attorney in a learned profession requiring years of preparation, we feel that any detriment to the broker is outweighed by the benefit to the public. Our purpose here is not to make it more difficult for the defendant to make a living. Our concern is that the defendant not be allowed to assure his commission at the expense of buyers and sellers of real estate.

We have in this opinion attempted some further definition of what constitutes the practice of law. We reject, however, sterile and formalistic attempts at definitions which do not take account of the practical aspects of real estate transactions, whether those definitions describe the term "practice of law" or the term "incident to business." We have looked to the nature of the conduct involved, not to whether the conduct happens to be compensated or gratuitous. Furthermore, we have avoided the

deceptively clear and easy distinction between documents which are simple and those which are complex.

An assessment of the public interest is the basis of our decision. Although customs and business practices may provide evidence that practices are consistent with the public interest, we have not found that they do so here. The public interest has two main aspects: first, assurance that buyers and sellers will have available the needed degree of skill, expertise and loyalty and second that brokers will be able to continue to conduct their business in a reasonable manner without prejudicing the interests of the parties to the transaction.

We believe that only a lawyer's attention to the documents in the kinds of real estate transactions involved here can assure to buyers and sellers the required skill, expertise and loyalty. The lawyer is equipped by an extended, intensive period of formal training covering a broad spectrum of the law to identify and solve problems not only in the field of real estate, but also in the many other fields of law which are intimately tied to the real estate transaction. The training required of the licensed broker, on the other hand, is less extensive and is confined to the area of real estate sales and management. The training required of the licensed salesman is even less extensive and equally confined. Just as it is in the public's interest to receive services relating to real estate sales only from qualified and licensed real estate brokers and salesmen, so it is in the public interest that legal services be furnished only by qualified and licensed lawyers. The preparation of documents or the filling in of form documents in the real estate transaction involves legal skill and knowledge. Just as the evidence shows that the defendant apparently believes

that a real estate salesman who does not have the education and training of a licensed broker should not be allowed to fill in forms without broker supervision and should not be allowed to handle any of the subsequent documents in the transaction, we believe that the public interest would not be served by allowing brokers, who do not have the education and training of licensed lawyers, to perform these same services.

Not only do we believe that only lawyers are capable of rendering the required skill and expertise to buyers and sellers of real estate, but also we believe that only lawyers can fulfill the obligation of loyalty owed to the parties in the transaction. Where the broker represents both parties, as when he is both the listing and procuring broker, he is faced with the problem of conflicting interests and in such a position he cannot sustain the burden of loyalty to both parties. It is only when each party is represented by an independent agent like the lawyer who has no pecuniary interest in the final outcome of the negotiations that each party can be fully and loyally represented.

We recognize that the public interest is promoted by the broker's ability to conduct his business in a reasonable manner which does not adversely affect others. As we have already indicated, we do not believe that our holding jeopardizes the broker's right to compensation in the form of the real estate commission. Furthermore, though we hold that certain conduct of brokers is prohibited by the rule against unauthorized practice of law, the broker is not, however, prevented from doing that significant and important part of his business for which his knowledge, skill and expertise especially qualify him. The valuable expertise of the real estate broker and the most important services which he

can render to the parties in the real estate transaction are not those of preparing the documents or of completing the legal forms necessary to the transaction. As the amici brief submitted by the Chicago Real Estate Board and others indicates:

> . . . the clients of real estate brokers rely on them on matters far more important than compiling routine printed forms. They rely on them for disinterested advice on the value of property, the advantages and disadvantages of locality, future trends of development, etc.—in short, whether or not to make the purchase or sale and like questions. (Brief and Argument of the Chicago Real Estate Board and others, at pages 39, 40.)

We believe that where parties are engaged in one of the most important single business and legal transactions of their lives involving the largest single investment in one of the parties' lifetime, the law should require no less for their protection than that they be represented by one who is skilled in identifying and solving the many potential legal problems connected with the transaction and who owes to them alone an undivided duty of loyalty. Hence we hold that the rule prohibiting the unauthorized practice of law requires that when the defendant is engaged as a broker by either the buyer or seller, it may not act for them in preparing or drafting offers to purchase and contracts to purchase and sell or any of the other subsequent documents necessary for the completion of the real estate sales transaction. Furthermore, it may not fill in forms of any of the above mentioned documents and it may not make additions to or deletions from such forms. Finally, it may not undertake to ex-

plain to its principal or any third party the legal effects of the provisions of any of these legal documents, whether forms or otherwise, or advise his principal or any third party concerning the legal effects of the provisions of any of these legal documents, whether forms or otherwise.

The decree appealed from is reversed in part and affirmed in part and is remanded to the Circuit Court of Cook County with directions to enter a decree in accordance with the views herein expressed. The costs are to be taxed equally between the parties.

Reversed in part, affirmed in part.

MURPHY, P. J. and KLUCZYNSKI, J., concur.