(No. 39131.—

THE CHICAGO BAR ASSOCIATION *et al.*, Appellees, *vs.* QUINLAN AND TYSON, INC., Appellant.

*Opinion filed Jan. 25, 1966.—Rehearing denied March 23, 1966.*

Underwood, J., dissenting.

Cummings & Wyman, of Chicago, (Austin L. Wyman and Kurt W. Teuthorn, of counsel,) for appellant.

J. R. Christianson, William S. Kaplan, and Richard L. Kahn, all of Chicago, for appellees.

Giffin, Winning, Lindner & Newkirk, of Springfield, (James M. Winning, of counsel,) for *amicus curiae* Illinois Association of Real Estate Boards.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, (Vernon M. Welsh and Frank L. Winter, of counsel,) for *amici curiae* Chicago Real Estate Board and Evanston-North Shore Board of Realtors.

DAVID J. A. HAYES, JR., of Springfield, for *amicus curiae* Illinois State Bar Association.

LOUIS ROBERTSON, *amicus curiae.*

GEORGE W. CRANK, of Chicago, (HOWARD T. SAVAGE and WILLIAM COUSINS, JR., of counsel,) for *amici curiae* Dearborn Real Estate Board, Inc., *et al.*

PER CURIAM : The Chicago Bar Association filed a complaint in the circuit court of Cook County to enjoin a real-estate brokerage firm, Quinlan and Tyson, Inc., from engaging in the unauthorized practice of law. After a lengthy hearing before a master in chancery it was found that the activities in question, performed in connection with negotiating purchases and sales of real estate for customers, constitute the practice of law. A decree was entered as prayed, except that the defendant was permitted to fill in the blanks of customary offer forms and contract forms as a necessary incident to its business. Upon review in the appellate court that part of the decree was reversed which allowed the filling in of forms, the court holding that none of the challenged services could be performed by persons not licensed to practice law. (*Chicago Bar Association* v. *Quinlan and Tyson,* 53 Ill. App. 2d 388.) We have granted leave to appeal. The Illinois State Bar Association, the Chicago Real Estate Board and others have appeared and filed briefs as *amici curiae.*

The defendant is a corporation employing some fifty or sixty persons of which three are licensed real-estate brokers and twenty-three are licensed real-estate salesmen. In conducting its business defendant prepares offers to purchase real estate, draws contracts of purchase and sale, prepares deeds and other instruments necessary to clear or transfer title, and supervises the closing of the transaction. No separate fee is charged for these services, the defendant's compensation consisting solely of brokerage commissions.

The documents ordinarily used—consisting of the contract of sale, the deed, bill of sale for personalty, escrow agreement, application for a mortgage and affidavits waiving possible objections to title—come in standardized forms which defendant's brokers, real-estate salesmen and office personnel fill out for the parties involved. The forms are completed by inserting pertinent factual information and by deleting or striking out portions which do not apply. The forms themselves have been drawn or composed by lawyers.

Defendant contends such services do not amount to the practice of law because their performance by real-estate men has become an established custom and no harm is shown to have resulted. It is argued that they are a necessary incident of the real-estate business and that the filling in of these forms is a simple matter, for which ordinary business intelligence is sufficient. Relied upon also is the assertion that no compensation is charged for the service. Cited and discussed, State by State, are decisions from other jurisdictions tending to support the position taken by the defendant.

We have considered the authorities referred to but find it unnecessary to discuss them at length. The question is not one of first impression in this State. It was settled by our decision in *People ex rel. Illinois State Bar Association* v. *Schafer,* 404 Ill. 45, where a licensed real-estate broker was held in contempt of court for preparing contracts, deeds, notes and mortgages in transactions for which he received a broker's commission. This court found unacceptable the contention that the drawing of such instruments was proper because done in connection with his real-estate business. Rejected also was the argument which considers those acts to be more or less mechanical and routine, requiring no legal knowledge or skill. We pointed out (at p. 54) that "Those who prepare instruments which affect titles to real estate have many points to consider. A transaction which at first seems simple may upon investigation be found to be

quite involved. One who merely fills in certain blanks when other pertinent information should be elicited and considered is rendering little service but is acting in a manner calculated to produce trouble."

Except for the matter of filling in blanks on the customary preliminary contract-of-sale form, which we shall hereinafter discuss, we agree with the appellate court that the *Schafer* case is not distinguishable from the case at bar. The fact that other kinds of unauthorized practice were also involved in that case does not affect the holding. Nor are we convinced from defendant's arguments that this authority should be overruled. It is not decisive that defendant is compensated only by its commission, making no special charge for the services in question; nor is it relevant that the services are customarily provided by real-estate men and that no identifiable harm is proved to have ensued. As the appellate court pointed out, it is the character of the acts themselves that determines the issue. If by their nature they require a lawyer's training for their proper performance it does not matter that there may have been a widespread disregard of the requirement or that considerations of business expediency would be better served by a different rule.

We think, however, that in one respect the prohibition in the appellate court's opinion is too broad. In the *Schafer* case this court did not in so many words discuss the preliminary or earnest money contract form, nor did we specifically condemn the mere filling in of the blanks on such forms. The decree of the trial court in the case at bar, permitting real-estate brokers to fill in the blanks of whatever form of such contract is customarily used in the community and to make appropriate deletions from such contract to conform to the facts, is approved. In the usual situation where the broker is employed to find a purchaser he performs this service when he produces a prospect ready, willing and able to buy upon the terms proposed by the seller.

(See *Fox* v. *Ryan*, 240 Ill. 391.) The execution of an offer or preliminary contract is an evidencing or recording of this service in bringing together the buyer and seller. It coincides with the job the broker was employed to perform and which he is licensed to perform, and in practice it marks the point at which he becomes entitled to his commission. It seems reasonable therefore that he be authorized to draft this offer or preliminary contract, where this involves merely the filling in of blank forms. *Keys Co.* v. *Dade County Bar Ass'n,* (Fla. 1950,) 46 So. 2d 605.

In *Gustafson* v. *V. C. Taylor & Sons,* 138 Ohio St. 392, 35 N.E.2d 435, a real-estate broker followed the practice of filling in the blanks of a printed "offer to purchase" form which, like those involved in the case at bar, had been prepared by a regularly admitted attorney-at-law. In a suit to enjoin this as unauthorized practice of law the court held that where the broker did nothing more than fill in simple factual material such as the date, price, name of the purchaser, location of the property, date of giving possession and duration of the offer he was not engaging in the practice of law. It was pointed out that such services require no more than ordinary business intelligence and do not require the skill peculiar to one trained and experienced in the law. The *Gustafson* case was cited and fully stated in the opinion of this court in the *Schafer* case, where we proceeded to say that if a particular service performed by the broker "requires legal skill or knowledge, or more than ordinary business intelligence, it constitutes the practice of law" but that "when filling in blanks as directed he may not by that simple act be practicing law, * * *." We think, therefore, that the broker may properly fill in the usual form of earnest money contract or offer to purchase where this involves merely the supplying of simple factual data.

But when the broker has secured the signatures on the usual form of preliminary contract or offer to purchase, completed by the insertion of necessary factual data, he has

fully performed his obligation as broker. The drawing or filling in of blanks on deeds, mortgages and other legal instruments subsequently executed requires the peculiar skill of a lawyer and constitutes the practice of law. Such instruments are often muniments of title and become matters of permanent record. They are not ordinarily executed and delivered until after title has been examined and approved by the attorney for the purchaser. Their preparation is not incidental to the performance of brokerage services but falls outside the scope of the broker's function. *Commonwealth* v. *Jones & Robins,* 186 Va. 30, 41 S.E.2d 720; *Washington State Bar Ass'n* v. *Washington Ass'n of Realtors,* 41 Wash. 2d 697, 251 P.2d 619.

The defendant and the real-estate board *amici* argue that all the forms in question are so standardized that only ordinary business intelligence is required to complete them. If the question were merely one of skill in filling out forms the argument would be persuasive. But more is involved than this simple operation and the question cannot realistically be viewed in such isolation. The legal problems involved often depend upon the context in which the instrument is placed, and only a lawyer's training gives assurance that they will be identified or pointed out. The mere completion of a form can readily be done by a stenographer. But it requires a lawyer's advice to determine whether it will accomplish the desired result under all the circumstances. As this court emphasized in the *Schafer* case, (at p. 52) quoting from a Missouri decision: " 'Any one who wants to pay the price may purchase a set of form books and read and copy them. He may use them in his own business if he so desires. But when he advises others for a consideration, that this or that is the law, or that this form or that is the proper form to be used in a certain transaction, then he is doing all that a lawyer does when a client seeks his advice' "

Drafting and attending to the execution of instruments

relating to real-estate titles are within the practice of law, and neither corporations nor any other persons unlicensed to practice the profession may engage therein. (*People ex rel. Illinois State Bar Association* v. *Peoples Stock Yards State Bank,* 344 Ill. 462.) Nor does the fact that standard-ized forms are usually employed make these services an incident of the real-estate broker business. Many aspects of law practice are conducted through the use of forms, and not all of the matters handled require extensive investiga-tion of the law. But by his training the lawyer is equipped to recognize when this is and when it is not the case. Neither counsel nor *amici* have suggested· any practicable way in which an exception to the general rule can be made where only the use of forms is involved, or where the transaction is a "simple" one. Mere simplicity cannot be the basis for drawing boundaries to the practice of a profession. A pharmacist, for example might be competent to prescribe for many of the simpler ailments, but it takes a medical background to recognize when the ailment is simple. Pro-tection of the public requires that only licensed physicians may prescribe or treat for any ailment, regardless of com-plexity or simplicity. And protection of the public requires a similar approach when the practice of law is involved.

The judgment of the appellate court is affirmed except insofar as it reversed in part the judgment of the circuit court. In that respect it is reversed. The decree of the circuit court is affirmed.

> *Appellate court affirmed in part*
> *and reversed in part;*
> *circuit court affirmed.*


Mr. JUSTICE UNDERWOOD, dissenting:

In resolving the very difficult questions presented in this case this court has compromised the differing positions of the parties in a result with which I cannot agree. Most of

the reasons compelling my dissent are adequately treated in the well considered opinion of the appellate court (53 Ill. App. 2d 388), and it would add little for me to restate them here. There is, however, one undiscussed facet of the many serious questions requiring informed consideration by the parties to every real-estate transaction before a contract is signed.

Increasingly apparent in recent years is the fact that every real-estate purchase and sale involves far-reaching tax consequences of a character partially or wholly unknown to the ordinary buyer and seller. As to such property the dollar amount of estate, inheritance and income tax liabilities of the parties will be determined largely by the manner in which the transaction is consummated. The year in which it occurs, the manner in which title is taken, whether it is a cash or installment sale or an exchange of properties will all substantially affect tax liability, not only of the parties but of their estates and heirs. As a result, such tax obligations may be increased, diminished or completely eliminated, depending on the decisions made by the parties as to the terms of their contract.

The opinion of this court permits real-estate brokers to prepare contracts for the purchase and sale of real estate by "filling the blanks" in, and making "appropriate deletions" from form contracts customarily used in the community and to secure the signatures of the parties thereon. It prohibits explanation by the brokers of the provisions of the contract and bars them from preparing any other documents subsequent to the contract. Actually, the contract between the parties is the fundamental instrument in a real-estate transaction and determines their future rights and obligations. It seems to me somewhat anomalous to permit the broker to prepare the controlling agreement but not those which it controls. Be that as it may, the practical result of this decision will be a binding contract executed by the

parties without informed consideration of the serious questions involved except in those instances where the buyer or seller is aware of the inherent hazards and consults his attorney before signing the contract.

The desired objective here is neither the preservation of business for lawyers nor commissions for brokers—it is the protection of the public. In my opinion this is best accomplished by entrusting the preparation of real-estate contracts to those trained to recognize the substantial questions involved and competent to advise the parties regarding what, in many instances, is the most important investment they will ever make.

For these reasons, as well as those set forth in the appellate court opinion, the judgment of that court should be affirmed.