ULIS H. GARRETT, Plaintiff-Appellee, *v.* WARREN C. BABB *et al.,* Defendants-Appellants.

(No. 73-148;

Second District—January 9, 1975.

*Rehearing denied January 11, 1975.*

North, North & Ohlson, of Rockford (David A. North, of counsel), for appellants.

John A. Strom, of Belvidere, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This is an appeal from a judgment against the seller of real estate, entered upon a jury verdict, which awarded $5,000 to the executor of the estate of a real estate broker. The judgment arose out of an action filed by Ulis H. Garrett, the realtor, since deceased, and substituted by Hanzel L. Garrett, as executor of the estate of Ulis H. Garrett, as party plaintiff against the defendant sellers, Warren C. Babb and Violet Babb. The complaint alleged that a commission was due plaintiff as the result of his efforts in attempting to secure a purchase for the sale of the Babb farm. The issues herein presented are whether the judgment was contrary to the manifest weight of the evidence and whether the jury was improperly instructed as to the applicable law.

In 1966, the defendants orally engaged Ulis H. Garrett to secure a purchaser for the sale of their 200-acre farm in Boone County. It is agreed that the defendants employed plaintiff on a nonexclusive basis and that the plaintiff's claim for commission is based solely upon plaintiff's efforts in producing Dean Warrington, a prospective purchaser, to whom the farm in this case was eventually not sold. The defendants contend that the judgment below must be reversed either because no bind-

ing sales contract was "completed" by the buyer and seller, or alternatively because the prospective purchaser was unwilling and/or unable to buy the property upon the terms agreed to by the seller.

The testimony of Dean Warrington, the prospective purchaser, indicated that in the early part of December, 1966, he went to the Garrett Realty office in response to an advertisement for the sale of a farm which he had seen in the local newspaper. Garrett took Warrington to the Babb farm and they examined the premises and Warrington generally discussed the terms of sale with Warren Babb and Garrett. About 2 or 3 days later Warrington again visited the Babb farm, accompanied on this occasion only by his wife, and again discussed the terms of sale but this time with considerable specificity. The terms agreed upon at this meeting were a purchase price of $130,000 payable as follows: $10,000 as a down payment, $10,000 at the time of the signing of the contract, $10,000 by November 1, 1967, and yearly installment payments of $2,000 or more plus 5¾% interest, with the entire contract to be paid 10 years from date. Included in the purchase price were certain specialized equipment, outbuildings, lumber, storage bins and other items. On December 9 Warrington and Garrett came to the Babb farm and discussed the same terms that Warrington and Babb had agreed to previously. At this time Warrington signed his check for $10,000 payable to Garrett, which Babb had written and upon the back of which Babb had written the following restrictive endorsement:

"Any endorsement on this check constituted as earnest money on Boone Co. Farm owned by Warren Babb purchase price $130,000."

This check was endorsed by Ulis Garrett, the realtor. After Babb filled out the front and back of Warrington's check he extended his hand, shook hands with Warrington and said, "You have bought yourself a good farm." It appears that Warrington secured this initial $10,000 down payment by cashing in $14,000 in government savings bonds which he had on hand. Warrington needed $6,000 to complete the total of $20,000 to be paid at the execution of the contract, according to the terms previously agreed to. Babb subsequently presented a contract to Warrington which omitted certain agreed upon terms. Warrington refused to sign this contract and, upon complaining to Babb about the omissions, he was advised by Babb that another contract would be drafted.

Warrington contacted his bank and was unable to obtain the additional $6,000 necessary to complete the contract. He then contacted the office manager of the Production Credit Office in Boone County and was told that the matter would be brought up before the board meeting. Warrington testified that he was informed that his $6,000 loan was approved on either January 12 or 19, 1967. Warrington then testified that sometime

later his attorney advised him that a second contract had been submitted by Babb and that if he (Warrington) had his finances arranged, it could be signed. He further testified that he was then advised that the farm had been sold to a third party. The testimony is unclear as to the length of time, if any, between the contract having been presented to Warrington's attorney and the date on which Warrington was informed that the farm was sold to another party. Upon learning that the farm had been sold to a third party, Warrington immediately set up a closing date but on that date no contract was signed. The record does not reveal to whom the farm was eventually sold.

Warren Babb, one of the defendants, was excluded from testifying by the court under the evidence act (Ill. Rev. Stat. 1971, ch. 51, par. 2). Defendants called Ronald Babb, Warren Babb's son, who testified that there was an express agreement between the plaintiff Garrett and defendant Babb that the commission was to be $5,000 in the event of a sale. He further testified that "the agreement was that the commission would only be earned on completion of the contract and Mr. Garrett agreed to that."

■■ The general rule regarding brokers' commissions was stated by the Illinois Supreme Court in *Fox v. Ryan* (1909), 240 Ill. 391, 396, 88 N.E. 974, 976, as follows:

> "Where a broker is employed to sell property by the owner, if he produces a purchaser within the time limited by his authority who is ready, willing and able to purchase the property upon the terms proposed by the seller he is entitled to his commissions, even though the seller refuses to perform the contract on his part. In such case, however, it is necessary for the broker to prove the readiness, willingness and ability of the purchaser to take the property on the terms proposed."

In *Chicago Bar Association v. Quinlan and Tyson, Inc.* (1964), 53 Ill.App.2d 388, 203 N.E.2d 131, reversed in part on other grounds in 34 Ill.2d 116, 214 N.E.2d 771, the court noted that it is not essential in Illinois that an executed, written agreement actually be entered into. The seller becomes bound at the moment that his terms have been met.

■■■ Applying these principles to the instant facts, we note first that the jury was at liberty to either credit or discredit the testimony of Ronald Babb as to the terms of the agreement between his father, Warren Babb, as seller, and Ulis Garrett, the realtor. That defendants orally engaged plaintiff to procure a purchaser for their real estate and that they agreed to pay plaintiff a commission for his services in procuring a purchaser were facts admitted in the pleadings and, therefore, removed from jury consideration. The credibility of witnesses and the weight to be ac-

corded their testimony must be determined by the trier of fact, and unless those findings are manifestly against the weight of the evidence, they will not be disturbed on appeal. (*M. E. Stein & Co., Inc. v. Jones* (1973), 13 Ill.App.3d 184, 300 N.E.2d 553.) We find that the implied finding of the jury that the parties did not agree that a commission was to be paid only upon "completion" of a contract is not contrary to the manifest weight of the evidence.

■■ Defendants next urge that the judgment below should be reversed because plaintiff failed to show the ability or willingness of the prospective purchaser to buy upon the terms agreed to by the seller. A prospective purchaser of realty will be considered ready, willing and able to buy if he has agreed to purchase the property and has sufficient funds on hand or if he is able to command the necessary funds with which to complete the purchase within the time allowed by the offer. (*William C. Bender & Co. v. Tritz* (1949), 338 Ill.App. 661, 88 N.E.2d 519.) While the exact date on which Warrington was advised that his $6,000 loan, needed for payment on signing of the contract, was approved is unclear, his testimony is clear that his loan was in fact approved and that he was advised of this no later than "around the 19th of January, 1967." The jury thus had a substantial basis upon which to find that Warrington became "able" to purchase by no later than "around January 19, 1967" since by that time the total of the funds which he had on hand and the funds which he could command were sufficient to enable him to execute a contract of sale according to the terms agreed to by Babb on December 9, 1966. While there was no testimony which showed that Warrington advised Babb that his $6,000 loan had been approved, we do not believe that under the facts of this case plaintiff was required to make such a showing in order to support his recovery. No testimony was adduced at trial indicating that Babb had any grounds upon which to question Warrington's ability to purchase or that Babb ever did, in fact, question Warrington's ability. While it appears that Warrington was not able to buy the realty on December 13, the contract which Babb submitted to Warrington on that date did not contain all the terms agreed to by the parties, and due to the nature of the offer to purchase, the failure of Warrington to sign the contract submitted on December 13 did not terminate the offer made December 9. Warrington had made a substantial down payment for the purchase of property for a total of $130,000. In these circumstances, we do not believe that the offer to purchase had lapsed by the mere passage of time by January 19 so that the purchaser's ability to buy came too late. Thus, the plaintiff has introduced evidence which, if believed by the jury, would support a finding that the plaintiff had produced a purchaser who was "able" to purchase the property

upon the terms agreed to by the sellers by no later than around January 19, 1967.

■■ The defendant contends, however, that even if Warrington became able to purchase by January 19, the fact that Warrington did nothing from January 19 until February 9 or 10 when he learned that the property had been sold after having been advised by his attorney that a second contract was in his office and could be signed if he had his finances arranged, indicated that Warrington was unwilling to buy. We believe, however, that there is sufficient evidence in the record upon which the jury could have determined that Warrington was continuously willing to purchase throughout the negotiations. The testimony is not explicit as to when Warrington was advised by his attorney that the second contract was ready to be signed. The jury could reasonably have determined that Warrington had insufficient time in which to arrange a date for signing the contract until he learned that the property had been sold to another. Warrington testified to his continued willingness up until February 11 to execute a contract with Babb according to the terms agreed to on December 9; he testified that subsequent to January 18 or 19 he began disposing of surplus livestock in anticipation of completing the same; and he testified that he began moving certain items of personal property onto the Babb farm. He further testified that he planted some trees and moved a hive of bees to the farm. The jury was free to reject an inference of unwillingness arising out of Warrington's inaction during the period in which the second contract was ready to be signed. On appeal, we will not substitute our judgment for that of the jury where there is sufficient evidence in the record to support the jury's determination. (*Rhodes v. Oliva* (1973), 13 Ill.App.3d 849, 301 N.E.2d 126.) Since we find that there was sufficient evidence in the record herein upon which the jury could find that plaintiff had procured a purchaser who was ready, willing and able to purchase within the time allowed by the offer, the verdict of the jury will not be set aside. We hold, therefore, that under the test of readiness, willingness and ability stated in *Bender, supra,* a broker who shows that he produced a prospective purchaser who agreed to the sellers' terms, who was continuously willing to purchase during the time of the relevant negotiations and who became able to execute a contract upon the agreed terms at a reasonable time subsequent to the initial negotiations, has made a prima facie case for recovery of his commission. The commission is earned upon the simultaneous concurrence of the buyer's readiness, willingness and ability.

Finally, defendants assert that the jury was improperly instructed as to the applicable law. Defendants contend that the giving of plaintiff's

instructions No. 6 and No. 7 over defendants' objections was error. They read as follows:

"If you believe by a preponderance of the evidence as defined in these instructions, that Ulis H. Garrett was employed by the defendants, Warren Babb and Violet Babb, to effect a sale of the farm owned by the defendants and that Ulis H. Garrett was the efficient and procuring cause of the sale, then Ulis Garrett would be entitled to a commission no matter how slight the service performed might appear to be. [Plaintiff's instruction No. 6.]"

"If you believe from the evidence that the defendants employed the plaintiff as a real estate agent to sell for them the land in question at the specified price, and that the plaintiff entered upon such employment and did on behalf of Warren Babb and Violet Babb find and negotiate with Dean Warrington and did bring him and the defendants together and that he and the defendants did agree upon the price and terms of such proposed sale and that Dean Warrington was ready, able and willing to make such purchase according to such agreement, and that it was no fault of his or the plaintiff that such sale was not finally made, then such facts would entitle the plaintiff to recover for his services in this behalf. [Plaintiff's instruction No. 7.]"

Plaintiff's instruction No. 6 presupposes that a sale actually took place. Factually the jury found that the plaintiff realtor was entitled to his commission because the realtor produced a buyer who was ready, willing and able, but due to defendants' fault, the sale did not actually take place. This instruction, if it would tend to mislead the jury, would require an item of proof that was not in evidence, to wit, an actual sale, and based on this instruction the jury could be justified in finding for the defendants as no sale actually took place. Viewing all of the instructions as a whole, we fail to see how the jury could be misled by this instruction and we accordingly find that, while the instruction may technically not be correct, we do not find that it constituted reversible error. This is particularly true when objected-to instruction No. 7 is considered. Defendants contend that instruction No. 7 is argumentative and misleading. We do not agree. The oft-reiterated rule in this state is that each party is entitled to have the jury instructed on its theory of the case provided such theory is supported by the evidence. *Trowbridge v. Chicago & Illinois Midland Ry. Co.* (1970), 131 Ill.App.2d 707, 263 N.E.2d 619.

■■ Defendants further contend that the trial court erred in refusing to give defendants' tendered instruction No. 9. We find from an examination of all the instructions given by the court that the jury was fully

and fairly instructed as to both the plaintiff's and defendants' theory of the case. Defendants' instruction No. 9 was completely covered by other instructions. As stated by the court in *Lau v. West Towns Bus Co.* (1959), 16 Ill.2d 442, 452, 158 N.E.2d 63, 69:

> "Where several instructions embodying the same legal principle are submitted to the court, it may select the one it sees fit and need not repeat the same proposition of law in different language in separate instructions."

Thus, the refusal to give defendants' instruction No. 9 was not error.

For the foregoing reasons, the judgment entered below is hereby affirmed.

Affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.