No. 17,656.

THE TITLE GUARANTY COMPANY *v.* DENVER BAR
ASSOCIATION, ET AL.

No. 17,659.

RECORD ABSTRACT AND TITLE INSURANCE CO. *v.*
DENVER BAR ASSOCIATION, ET AL.

(312 P. [2d] 1011)

Decided June 10, 1957. Rehearing denied August 5, 1957.

Mr. ERSKINE R. MYER, Mr. FRED E. NEFF, for plaintiff in error Record Abstract and Title Insurance Co.

Mr. CHARLES J. BEISE, Mr. GOLDING FAIRFIELD, for plaintiff in error The Title Guaranty Company.

Mr. PERCY S. MORRIS, for defendants in error.

Mr. WM. RANN NEWCOMB, Mr. LAWRENCE A. LONG, Mr. PHILIP A. ROUSE, pro se.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

MANY of the problems presented in these two cases are fully presented and disposed of in our opinion announced this day in Conway-Bogue Realty and Inv. Co. v. Denver Bar Association, No. 17,661, and companion cases Nos. 17,662 and 17,663, in which cases the defendants were real estate brokers. The plaintiffs are the same in all cases, the defendants here are title insurance or guaranty companies. The opinion in the Conway-Bogue case should be read and considered in connection with this opinion.

The Denver Bar Association, the Colorado Bar Association, Philip A. Rouse and Lawrence A. Long, chairmen of the committees of the associations on unauthorized practice, Wm. Rann Newcomb and Lawrence A. Long, individually and as licensed attorneys in the state of Colorado, acting in their own behalf and in behalf of all licensed attorneys in the state of Colorado and on behalf of the public, as plaintiffs, in separate actions sought to enjoin the Title Guaranty Company, a corporation, and the Record Abstract and Title Insurance Company, a corporation, from preparing for others certain legal documents, giving advice to the parties to such documents as to the legal effect thereof and performing other acts, all of which plaintiffs allege constitute the unlawful practice of law.

The issues made by the pleadings in each of these cases are substantially the same except that as to the Title Guaranty Company it is alleged that the objectionable acts are done in connection with its loan business, whereas there is no allegation that the defendant, The Record Abstract and Title Insurance Company, has any loan business.

The evidence presented by plaintiffs to establish the unlawful practice of law is generally the same as to each defendant, except as above noted in the pleadings.

The complaints allege that each defendant is a Colorado corporation organized and operating pursuant to C.R.S. '53, 31-11, having their principal places of business in the City and County of Denver, Colorado; that each defendant has been and is now carrying on a business of insurance pertaining to or in connection with titles to real estate, and making and certifying abstracts of title to real estate; the defendant, Title Guaranty Company, has been and is now engaged in the business of making loans secured by encumbrances on real estate; that for many years last past each defendant has been engaged in the unlawful practice of law by preparing for others, as a practice, deeds conveying real estate, promissory notes, deeds of trust and mortgages securing the same, releases of deeds of trust and mortgages (herein referred to as "closing documents"), contracts and agreements (herein referred to as "receipt and option") and giving advice to the parties to such instruments as to the legal effect thereof; that the defendants are not parties to said instruments and that they charge for their services in connection with the preparation of the said instruments and the closing of real estate transactions; that the defendants have been and now are holding themselves out to the public as willing, able, competent and qualified to prepare the above mentioned instruments and have solicited real estate brokers and the public generally to employ them to render the above mentioned services.

Defendant, Title Guaranty Company, in its answer admits doing the acts complained of and alleges that it is entitled to prepare the necessary papers with reference to loans made by it for the reason that it is a party to said loans, and the instruments evidencing the same; alleges that it is entitled to prepare closing documents in other transactions by reason of the fact that the same is done as an incident of its business in issuing policies of title insurance; and further alleges that it is entitled to prepare said documents pursuant to general law, its articles of incorporation, and statutory authority granted by C.R.S. '53, 31-11-7 (1); and finally, that preparation by it of such documents is required by public convenience and necessity. Defendant Record Abstract and Title Insurance Company, denies that it prepares any loan papers and sets up for its defense the same matters urged by Title Guaranty Company.

By stipulation the cases were consolidated for hearing before one judge but without merging the actions. The testimony consisting of some 800 folios, all of it elicited from the defendants' officers or employees, does not deal with any specific situation but presents in detail the rather uniform practice of the defendants in the conduct of their businesses and in doing the acts complained of.

The evidence shows conclusively that (1) In a limited number of cases wherein parties to a real estate transaction are not interested in an abstract or title insurance, both defendants offer and supply to said parties a service which the defendants choose to call "escrow service," which consists of preparing some or all of the above listed documents and closing the transaction and for which both defendants charge a minimum fee of $20.00 for the first $10,000.00 of consideration, plus $1.00 per thousand for the second $10,000.00 and $0.50 per thousand for all in excess of $20,000.00. (2) Both defendants, as a practice, when issuing title insurance and in connection with the issuance of said insurance render the above described "escrow service" and charge in addition

to the insurance premium the escrow service fee whether or not any documents are prepared by defendants. (3) The defendant, Title Guaranty Company, is engaged extensively in the real estate loan business in its own behalf and often before making a loan has commitments for the purchase of said loans when completed; in making said loans Title Guaranty Company uniformly uses its own money, is a party to the loan papers and in making such loans prepares the loan papers and releases of prior encumbrances upon the property involved when required.

The evidence further shows that the two defendants are the only Colorado corporations engaged in the business of insuring titles in the state of Colorado; that there are four foreign corporations doing some title insurance business in the state.

The evidence further shows that both defendants have advertised and are advertising their "escrow service" and have solicited "escrow service" business from licensed realtors and others; both defendants express their intentions of continuing the practice outlined above unless enjoined from so doing.

These cases present three problems for solution:

FIRST: The trial court enjoined the defendant, Title Guaranty Company, from preparing promissory notes and deeds of trust and mortgages in which it is named as payee and which evidence loans made by it of its own money — "if at the time of execution of such instruments, the defendant knows definitely that the loan evidenced by such instruments will be purchased from it by a certain and specific purchaser."

We find nothing in the record to warrant the imposition of this restraint upon the defendant in the conduct of a major part of its legitimate business.

■ It is elementary that a layman or a corporation may prepare instruments to which he or it is a party without being guilty of the unauthorized practice of law. The evidence is clear and conclusive that the defendant

in good faith, and not by way of subterfuge, always loans its own money, takes the note and security in its own name and none other; that no matter how firm a commitment it may have from a customer to buy the loan, such commitment is no more than a contract to purchase the loan under certain terms and conditions when and if the loan is completed and title thereto vested in defendant. Sales of the loans are rarely, if ever, completed within thirty days of the making thereof, more often from ninety days to a year and a half. During this time the defendant's own money is invested and it is the owner of the loan. Plaintiffs' efforts to prove that the defendant in making such loans was acting in a representative capacity as independent contractor or agent for the persons who finally acquire the loans failed entirely. Defendant Title Guaranty Company in preparing loan papers is acting for its own use and benefit and not for or on behalf of others, and its actions in that respect should not be restrained.

Therefore, that part of the decree restraining the defendant, Title Guaranty Company, from preparing notes and deeds of trust or mortgages securing the same, in which it is named as payee and which evidences loans made by it out of its own money is erroneous.

SECOND: In situations where parties use defendants' escrow service but do not purchase title insurance.—It is contended by both defendants that in connection with their insurance and abstract business, they render what they choose to call "escrow service." Such service consists of affording space and accommodations where real estate transactions are closed, including preparation of deeds, promissory notes, trust deeds and mortgages, releases of trust deeds and mortgages (in the case of defendant Title Guaranty Company, the infrequent preparation of receipts and options), preparation of settlement·sheet, distribution of the money and the documents. In other words, the service is what is more commonly and in our opinion accurately called a "clos-

ing service."' It is the same service that realtors render as an incident of their business and without separate charge.

No matter by what name it is called, much of the service rendered constitutes the practice of law as held in the Realtor cases this day decided. At the time these suits were filed neither defendant charged for this escrow service when rendered in a transaction where title insurance was written. Sometime after the filing of these suits and prior to the trial thereof the defendants changed their methods of doing business and each at the time of trial charged the escrow fee set forth above in cases where insurance was issued as well as in those cases where no insurance was involved. This charge is in addition to the charge or premium for title insurance and bears no relation to nor does it have any connection with the charge for title insurance.

Counsel for defendants seek to justify the rendering and charge for this "escrow service" where no insurance is written on the following grounds:

(a) Filling in of skeleton blanks effecting the conveyance or encumbering of property, such as a simple deed or mortgage, is generally regarded as the legitimate right of any layman.

In the Realtors' case we held to the contrary and expressly held that such acts constitute the practice of law.

(b) That the general incorporation laws of the state of Colorado, C.R.S. '53, 3-1-20, grant to all corporations such powers as are necessary or convenient to the attainment of the objects set forth in the certificate of incorporation, which in the case of these defendants would include the drafting and preparation of deeds, contracts, mortgages and other papers or documents involved in real estate transactions.

█ It is apparent that preparation of the documents in question where title insurance is not applied for or written has nothing whatsoever to do with defendant's

business of abstracting or insuring titles to real estate. Preparation of these documents constitutes the practice of law and a power not granted to the defendants expressly or by implication under the corporation laws of this state. Preparation of these documents is not necessary to defendants' abstract or title insurance business, it is a separate, distinct and other business, much of which constitutes practice of law.

THIRD: The third problem presented and the only one causing difficulty arises where parties, either as owners or as mortgagees, secure title insurance, and the defendants prepare some or all of the "closing documents" in connection with the transfer or mortgaging of the property and the issuance of title insurance. In this connection we must bear in mind that the defendants have a fixed and definite charge for insuring titles, another definite and fixed charge for the so called "escrow service"; these charges bear no relation to each other, and in our view the services bear no relation to each other. Preparation of the documents provided by the "escrow service," no doubt pleasant and profitable to defendants, is not necessary or incidental to the issuance of title insurance nor is it necessary to an owner or mortgagee that defendants in insuring title in the person requesting insurance prepare all documents in connection with the transfer or mortgaging of the property involved.

Persons desiring title insurance from Title Guaranty Company are required to sign an application form which states:

"If the company, after examination, shall decline to issue the policy on account of defects in the title, the applicant hereby agrees to pay the necessary expenses incurred by the Company in making such examination, not exceeding said amount to accompany this application * * *."

Record Abstract and Title Insurance Company uses a similar but slightly different form. Under this provision

the defendants are to be compensated for their services if it is found the title is not insurable. How can it be said that it is necessary or a reasonable incident of defendants' business in such a case to perfect title? That duty rests with the applicant.

The testimony of defendants shows that in about 425 of approximately 600 deals per month wherein defendant Title Guaranty Company issues title insurance, it does not render its "escrow services" and prepares no papers *making title*. Of the remaining 175 deals defendant makes its own loans in about 100 and prepares title papers which we have said it may do in the circumstances; only in the remaining 75, of the total deals handled, do the parties to the deal find it necessary or expedient to have Title Guaranty Company prepare one or more of the documents. Only one-half of these 75 deals using Title Guaranty Company's "escrow service" involve deals where title insurance is obtained. In other words, Title Guaranty Company prepares papers making title in a mere $6\frac{1}{4}\%$ of the total number of deals handled in which insurance is issued. Bearing the above facts in mind we are not impressed with defendants' contention that this escrow service is necessary and essential to the conduct of its business of insuring titles.

In every case, and as a condition to issuance of a title policy, defendants require its title insurance customers to use its escrow service, to pay an escrow fee which includes the services of their attorneys or legal staff. Defendants' contention that they are not practicing law in preparing these documents strikes a discordant note and contradicts their answer wherein each alleges:

"Defendant has caused such documents * * * to be prepared under the supervision of one of defendant's attorneys." and their own testimony that their attorneys check every document prepared.

Defendants through their attorneys, attorneys who owe their undivided allegiance to defendants, and not to the customer who pays the bill, do precisely

those things that a private attorney would do for the customer were he called upon. For such services the attorney charges his client a fee and to such client he owes his undivided allegiance. We find no merit in defendants' contention that this escrow service is necessary or essential to the conduct of its insurance business.

Defendants further contend that C.R.S. '53, 31-11 grants to them the right to prepare the documents in question and to charge therefor, their chief reliance being on 31-11-7 (1):

"(1) To make insurance of every kind pertaining to, or connected with the titles to real estate, and shall have the power and right to make, execute, and perfect such, and so many contracts, agreements, policies, and other instruments as may be required therefor for compensation or otherwise;"

Counsel interprets this provision as granting to title insurance companies the power to (1) make insurance; (2) prepare such real estate instruments as might be necessary to the proper vesting of title. While this statute may appear to authorize such acts as defendants claim are incident to the writing of title insurance, nevertheless we are of the opinion that as properly interpreted it grants to defendants nothing more than power to make insurance connected with titles to real estate and to "make, execute and perfect such, and so many contracts, agreements, policies and other instruments as may be required" for *making insurance*. It does not authorize the doing of any act or the performance of any service within the special field restricted to those duly licensed to do or perform such acts or services. To hold otherwise would be to authorize corporations to practice law for compensation. Corporations cannot practice law and could not do so at the time of the adoption of this statute. *People v. Denver Clearing House Banks,* 99 Colo. 50, 59 P. (2d) 468.

Counsels' interpretation would render the statute unconstitutional as being an unauthorized invasion

by the legislature of a matter which rests in the exclusive jurisdiction of the judiciary as pointed out in our opinion in the Realtor cases. The following language from *Stewart Abstract Co., et al. v. Judicial Commission of Jefferson County, et al.,* (Tex. App.), 131 S.W. (2d) 686, is applicable to and an answer to counsel's contention:

"In so far as these provisions may be construed as authorizing title insurance companies to perform acts amounting to the practice of law they can have no validity whatever. It is of course not within the province of the Commission to regulate the practice of law nor to empower a corporation to practice law. And since it is not within the province of the Commission to determine what acts shall constitute the practice of law, and what shall not, we think the presumption may be fairly indulged that the members of the Commission did not have that matter in mind when the schedule was prepared. In any event, such schedules could not legally empower the appellants to perform the acts charged against them which constitute the practice of law. Rhode Island Bar Ass'n. v. Automobile Service Ass'n., 55 R.I. 122,-179 A. 139, 100 A.L.R. 226; Meuiner v. Bernich, La. App. 170 So. 567." We conclude that the statute in question does not grant to defendants authority to prepare legal documents for others for compensation or at all. Their authority to prepare such documents extends only to those instruments to which it is a party.

Defendants refer to *La Brum v. Commonwealth Title Company of Philadelphia,* 358 Pa. 239, 56 A. (2d) 246, as being parallel to the cases under consideration. There are two significant distinctions. (1) Pennsylvania does not consider preparation of papers of the type in question to be the practice of law; (2) No charge was made for preparing the papers. Counsel also rely strongly on *Cooperman v. West Coast Title Co.,* (Fla.), 75 So. (2d) 818, while this case supports their view in some respects,

the court limited its opinion to the facts before it, saying:

"But what we have written applies only to the performance of those acts *which are indispensable to the determination of insurability* and must not be construed as sanctioning a charge of any sort, in addition to the premium for the issuance of title insurance, * * *." (Emphasis supplied.)

We are not impressed by these pronouncements but are persuaded that the cases holding to the contrary represent the better view.

In *Hextor Title & Abstract Co. v. Grievance Committee,* 179 S.W. (2d) 946, the supreme court of Texas had before it a case similar in all respects to the cases at bar except no separate charge was made for the service of preparing deeds, etc. We quote with approval the following language which is applicable to the cases at bar:

"The defendant is incorporated for the purpose of making abstracts of title to land and liens thereon. The preparation of the conveyances and other instruments covered by the injunction in nowise relates to this business. * * * Its contention is that it has the right to prepare all papers necessary to place a good title in the applicant, or prospective applicant, in order that it may then safely insure the title to such property, and that in doing so it is only transacting the business of the title insurance company. We are of the opinion, however, that the preparation of such papers is not the business of the insurance company. In this connection, it should be noted that this suit does not involve the right of the corporation to prepare the contract of insurance to which the insurance company would be a party, nor does it relate to documents prepared to cover the release or discharge of the company from obligations previously incurred by it. These transactions involve conveyances, releases, and mortgages from grantors to grantees, and to which the insurance company is not a party. They

are executed for the purpose of placing good title in the grantee, so that the insurance company may thereafter insure the title if it chooses. Such papers relate to the rights of third parties in which the corporation has no present interest, but only a prospective one.

They affect the rights of individuals apart from their interest in the title insurance policy. The work of preparing these papers is distinct from the searching and insuring of the title — the legitimate business for which the corporation is incorporated. It is not the business of the title insurance company to create a good title in an applicant for insurance by preparing the necessary conveyances, nor to cure defects in an existing title by securing releases or prosecuting suits to remove clouds from title, merely for the purpose of putting the title in condition to be insured. The title insurance company must accept the title and insure it as it is, or reject it. It may examine the title, point out the defects, and specify the requirements necessary to meet its demands, but it is the business of the applicant for the insurance to cure the defects.

\* \* \*

"The fact that the corporation has several licensed lawyers in its employment to prepare the instruments in question does not alter the case. \* \* \* The attorney in preparing such papers does so as the agent of the corporation by whom he is employed. His first obligation of loyalty is to the corporation. His acts are the acts of the corporation, and even though the corporation acts through an attorney, it is nevertheless practicing law \* \* \*."

In *People v. Lawyers Title Corporation,* 282 N.Y. 513, 27 N.E. (2d) 30, the defendant was convicted of the illegal practice of law, it sought to justify its actions under a statute which made it unlawful for a corporation to hold itself out as entitled to practice law. In sustaining defendant's conviction the court said:

"Nor may the defendant protect itself behind the claim that the services rendered were necessary to the examination of titles and the issuance of its policies of insurance. The title company admitted on the record, in part, at least, that in order to certify that any one of the permanent mortgages was a first lien free and clear of all prior liens and encumbrances it was unnecessary for it to prepare the various papers or to conduct and carry through any of the transactions with the Federal Housing Administration or with the financing schemes of the developers.

"* * * In the case at bar, legal services of a character usually performed by lawyers as a part of their ordinary office practice were undertaken with continuity and were squarely within the prohibitions of the statute. * * * To protect the public from unskillful preparation of legal documents and the unskillful handling of legal transactions, the policy of the State, indicated particularly by the sections of the Penal Law referred to, is to bar corporations from doing these acts and carrying through such transactions as were usually required to be performed by licensed attorneys and counselors at law."

The judgment and decree entered in No. 17,659 against the defendant Record Abstract and Title Insurance Company is affirmed.

The judgment and decree entered in No. 17,656 against the defendant Title Guaranty Company is reversed in part and remanded to the trial court with instructions to eliminate therefrom the restraint imposed upon the defendant in preparing loan papers and releases of encumbrances in transactions in which it is a party and so appears in the documents relating thereto and has loaned its own money. In all other respects the judgment and decree is affirmed.