**In re Martin P. SADNICK.**

**No. 86 C 4542.**

United States District Court,
N.D. Illinois, E.D.

Sept. 12, 1986.

Kenneth A. Kozel, Petz & Kozel, LaSalle, Ill., for plaintiff.

James A. Andreoni, Holmstrom & Green, P.C., Peru, Ill., for First Federal Sav. & Loan of Bureau County.

## MEMORANDUM OPINION

GRADY, Chief Judge.

Debtor Martin P. Sadnick ("Sadnick") appeals the order of the bankruptcy court validating the mortgage lien on his residence held by First Federal Savings and Loan Association of Bureau County, Illinois ("First Federal"). First Federal has also requested attorney's fees pursuant to Federal Rule of Civil Procedure 11. For the reasons stated below, we affirm the bankruptcy court's order and deny First Federal's request for fees.

## FACTS

Sadnick and his wife obtained a mortgage from First Federal. The mortgage contract provided that Sadnick and his wife waived all right of homestead exemption in the property.[1] Sadnick failed to make his mortgage payments and First Federal instituted a foreclosure action in La Salle County Circuit Court, Ottawa, Illinois. Sadnick filed a petition in bankruptcy under 11 U.S.C. §§ 1301 et seq., before First Federal obtained a foreclosure judgment.

Sadnick subsequently filed a motion with the bankruptcy court asking it to enter an order allowing him to avoid First Federal's mortgage lien because his property was exempt.[2] He contended that the mortgage should be set aside because it was prepared by First Federal, a corporation, not an attorney. Consequently, he argued, First Federal had engaged in the unauthorized practice of law by drafting the mortgage. The bankruptcy court, Judge John D. Schwartz, denied Sadnick's motion in an unpublished Memorandum and Order dated May 6, 1986. Sadnick timely filed his notice of appeal. Subsequently, his Chapter 13 petition was dismissed on May 28, 1986, on the motion of the trustee.

## STANDARD OF REVIEW

An order determining the validity of a lien is a final order in a core proceeding. 28 U.S.C. §§ 158, 157(b)(2). *See In re Mor-*

---

1. Under Ill.Rev.Stat. ch. 110, ¶ 12–901:
   Every individual is entitled to an estate of homestead to the extent in value of $7,500, in the farm or lot of land and buildings thereon, a condominium or in personal property, owned or rightly possessed by lease or otherwise and occupied by him or her as a residence, or in a cooperative that owns property that the individual uses as a residence; and such homestead, and all right and title therein, is exempt from attachment, judgment, levy or judgment sale for the payment of his or her debts or other purposes and from the laws of conveyance, descent and legacy....

2. The motion was apparently made under 11 U.S.C. § 506(d). *See* April 9, 1986 Transcript of Proceedings at 7.

*rell,* 42 B.R. 973 (N.D.Cal.1984). While we must review findings of fact under the "clearly erroneous" standard, where, as here, only a question of law is presented, we may reach our own conclusions independent of the bankruptcy court. *In re Ellis,* 66 B.R. 821, 823 (N.D.Ill.1986) (Grady, C.J.).

## DISCUSSION

█ Illinois requires persons who wish to practice law to have certain minimum levels of training, education and character. Ill.Rev.Stat. ch. 110A, ¶¶ 701–709; Ill.Rev. Stat. ch. 13, ¶ 1. "[A] corporation may not engage in the practice of law on behalf of others nor may it appear in court except through a duly licensed attorney." *Johnson v. Pistakee Highlands Community Ass'n,* 72 Ill.App.3d 402, 28 Ill.Dec. 473, 475, 390 N.E.2d 640, 642 (2d Dist.1979), *citing Tom Edwards Chevrolet, Inc. v. Air.-Cel, Inc.,* 13 Ill.App.3d 378, 300 N.E.2d 312 (2d Dist.1973); Ill.Rev.Stat. ch. 110A, ¶¶ 701–710. The Illinois Supreme Court has stated that "[w]here the rendering of ... services involves the use of legal knowledge or skill, or where legal advice is required and is availed of or rendered in connection with such transactions, this is sufficient to characterize the services as practicing law." *People ex rel. Illinois State Bar Ass'n. v. Peoples' Stock Yards State Bank,* 344 Ill. 462, 176 N.E. 901, 908 (1931). More specifically, the court held that:

> [w]here a will, contract, or other instrument is to be shaped from facts and conditions, the legal effect of which must be carefully determined by a mind trained in the existing law in order to insure a specific result and guard against others, more than the knowledge of the layman is required, and a charge for such service brings it definitely within the term "practice of law."

*Id.* While Illinois courts have not since adopted a more precise definition of "practice of law," they have held that unauthorized practice is a defense in a private civil action. *Biggs v. Schwalge,* 341 Ill.App.

268, 93 N.E.2d 87 (1st Dist.1950). *See, e.g.,* Annot., 7 A.L.R.4th 1146 (1981).

With respect to real estate contracts, deeds and mortgages, Illinois courts have addressed a variety of settings in which they have had to determine whether lay persons were "practicing law." For example, in *Peoples' Stock Yard Bank, supra,* the Illinois Supreme Court held that a bank engaged in the unauthorized practice of law when it:

> conducted proceedings in the circuit, superior, and probate courts of Cook county under cover of the names of licensed attorneys who were its salaried employees and appropriated to its own use the fees allowed to or charged by these attorneys. For several years it also examined abstracts of title and rendered legal opinions thereon, prepared and attended to the execution of wills for its customers and others, and furnished the legal advice necessary to the performance of these services, all by the use of the names of the attorneys employed by it, and has appropriated to its own use the attorneys' fees charged and collected for all such services and advice.

176 N.E. at 908. Subsequently, the Illinois Supreme Court recognized that a person who fills in blanks on contracts of sale, deeds, bills of sale, escrow arrangements and applications for mortgages may be practicing law. *Chicago Bar Ass'n. v. Quinlan and Tyson, Inc.,* 34 Ill.2d 116, 214 N.E.2d 771 (1966). There, licensed real-estate brokers and salespersons, acting on behalf of sellers, drew contracts of purchase and sale, prepared deeds and other instruments necessary to clear or transfer title, and supervised the closings of transactions. They also inserted pertinent factual information in blanks on forms originally drafted by attorneys. The Illinois Supreme Court held that merely filling in the blanks constituted "practicing law" even though the brokers and salespersons were not directly compensated for doing so. The court noted:

> Such instruments are often muniments of title and become matters of permanent

record. They are not ordinarily executed and delivered until after title has been examined and approved by the attorney for the purchaser. Their preparation is *not incidental to the performance of brokerage services* but falls outside of the broker's function.

*Id.* at 774 (emphasis added).

As the Illinois Supreme Court intimated in *Quinlan and Tyson,* an exception exists to the general rule that allows persons or corporations to engage in activities that otherwise might constitute "practicing law" as long as the activities are incidental to the corporation's main business. *See generally* Annot., 53 A.L.R.2d 788, 796–804 (1957). Apparently addressing this exception, the Illinois Appellate Court for the Second District in *Johnson, supra,* noted that Illinois "courts have not determined, however, whether the out of court preparation of legal documents by a corporation through its officers or employees on its own behalf constitutes the unauthorized practice of law." 28 Ill.Dec. at 475, 390 N.E.2d at 642. The court held that an officer of a housing subdivision's homeowners' association, which was empowered to assess maintenance fees against homeowners, could prepare and file claims for liens against delinquent homeowners and not be liable for unauthorized practice. The court noted that "[c]ourts of review in other jurisdictions have considered similar matters and have concluded that the preparation of legal documents by a corporation on its own behalf did not constitute the unauthorized practice of law." 28 Ill.Dec. at 475, 390 N.E.2d at 642, *citing Title Guaranty Co. v. Denver Bar Ass'n.,* 135 Colo. 423, 312 P.2d 1011 (1957); *State v. Pledger,* 257 N.C. 634, 127 S.E.2d 337 (1962).

The bankruptcy court below relied on *Johnson* in rejecting Sadnick's claim that First Federal's mortgage should be set aside because it was prepared by First Federal employees. (It is not clear whether the employees were lay employees or lawyers, but we do not think it affects the result.) Judge Schwartz reasoned that

First Federal was not practicing law because it merely prepared "the documents the mortgagors must sign if they want a mortgage." Further, he noted that First Federal did not provide legal advice to mortgagors and it did not prohibit them from retaining counsel. Sadnick claims that the bankruptcy court's reliance on *Johnson* was misplaced, and he attempts to distinguish *Johnson* here. Sadnick argues that *Johnson* should not apply to the instant situation because *Johnson* involved claim for a lien, which does not have to be signed by a party other than the one filing the claim. Here, Sadnick argues, the mortgagor and mortgagee both must sign documents prepared by the mortgagee bank. We find the argument unpersuasive.

First, we note that there is no language in *Johnson* suggesting that the court intended to limit its holding to documents which need be signed only by the party drafting or completing them. True, as Sadnick points out, the Illinois Supreme Court in *Quinlan and Tyson* noted that "[t]he drawing or filling in of blanks on ... mortgages or other legal instruments subsequently executed requires the skill of a lawyer and constitutes the practice of law." 214 N.E.2d at 774. But, as we noted *supra* at 842, the Illinois Supreme Court has also recognized that corporations may engage in such activities where incidental to their main businesses. And *Johnson* seems to fit squarely into this exception.

Moreover, most courts from other jurisdictions have held that banks can prepare mortgage documents in transactions in which they are also acting as lenders and not be liable for unauthorized practice. *Pulse v. North American Land Title Co. of Montana,* 707 P.2d 1105, 1109–10 (Mont. 1985); *Miller v. Vance,* 463 N.E.2d 250, 252 (Ind.1984); *Cain v. Merchants Nat'l Bank & Trust Co.,* 66 N.D. 746, 268 N.W. 719 (1936). *But see Kentucky State Bar Ass'n v. Tussey,* 476 S.W.2d 177 (Ky.App. 1972). Thus, in *Miller,* a bank's employees "perform[ed] the routine service of filling in information on standard real estate mortgage forms. This services [was] inci-

dental to and directly connected with the bank's regular business of making loans." 463 N.E.2d at 252. While permitting bank employees to engage in some instances of drafting or filling in blanks on forms, most courts impose some limitations on such activities, however. For example, in *Miller* the Indiana Supreme Court held that a "bank employee may not give advice or opinions as to the legal effects of the instruments he prepares or the legal rights of the parties. [Also, t]he bank may not make any separate charge for the preparation of the mortgage instruments." *Miller*, 463 N.E.2d at 253. *Accord Pulse*, 707 P.2d at 1109.

Here, Judge Schwartz found that First Federal was "merely preparing" the mortgage documents. Memorandum and Order at 2. The transcript of the proceedings of April 9, 1986, which has been included in the record on appeal, does not shed any more light as to what the bank did specifically. Sadnick's briefs have been equally unhelpful; he, too, has claimed only that First Federal "prepared" the mortgage. Brief of Debtor-Appellant at 4; Reply Brief of Debtor-Appellant at 1. Without more explanation, we are thus left in the dark regarding exactly what First Federal did in "preparing" the mortgage documents. Nevertheless, we think we can dispose of this appeal based on the evidence before us. Sadnick has not alleged that First Federal engaged in some activity which has been prohibited in *Miller* and *Pulse*, namely giving advice regarding the legal effects of the mortgage documents or charging for such advice. We think it safe to assume that First Federal merely filled in the blanks on the mortgage instruments as banks regularly do in the course of the mortgage lending business, and this, without more, does not constitute the practice of law.

## ATTORNEY'S FEES

■ First Federal has filed a motion for attorney's fees under Fed.R.Civ.P. 11. It did not make such a motion in the bankruptcy court, however, either when Sadnick's motion to set aside the lien was heard or when his Chapter 13 petition was dismissed.[3] While we can impose fees under Rule 11 for proceedings here on appeal, we decline to do so. First Federal claims that Sadnick originally made his motion and subsequently filed this appeal only for the purposes of causing unnecessary delay in the foreclosure action in state court. *See* Appellee's Motion and Request for Fees Pursuant to Rule 11 at ¶ 6. While there may be some element of truth to this allegation, it also appears to us that Sadnick's legal theory underlying his motion was not far-fetched; indeed, it has been accepted by some courts. *See generally* Annot., 53 A.L.R.2d 708 (1957). Thus, we find Rule 11 sanctions inappropriate in this case.

## CONCLUSION

The order of the bankruptcy court denying debtor-appellant's motion to set aside

---

**3.** The motion apparently was prompted by Judge Schwartz's comments at the hearing on Sadnick's motion to set the lien aside:

THE COURT: It is an interesting motion, isn't it?

MR. ANDREONI [ (Counsel for First Federal) ]: Yes, it is.

THE COURT: What do you want to do with this one?

MR. KOZEL: [ (Counsel for Sadnick) ]: We want to set aside their lien, Judge.

THE COURT: Fascinating. How are you going to do that?

MR. KOZEL: According to—there is a statute in Illinois that says that—

THE COURT: That says if they practice law the mortgage is void. Let's assume that they practice law for the time being, that the mortgage is void.

MR. KOZEL: It is unlawful to practice law in—

THE COURT: I said that the mortgage is void.

MR. KOZEL: Well, if you go to Quinlan and Tyson—

. . . . .

THE COURT: You've got a first mortgage with a homestead waiver in there. Counsel, there is a Rule 11. Have you ever read it? I suggest that you read it. Both of you. Now, do you want me to set this down. I'll tell you what I'll do. You go read it and come back here in ten minutes and tell me what you want to do. Pass it.

Transcript of April 9, 1986 proceedings at 5–6. Thereafter, the court recessed, but when it returned, no mention was made of Rule 11 and Judge Schwartz set a briefing schedule on Sadnick's motion.

the lien of creditor-appellee is affirmed. Creditor-appellee's motion for sanctions under Rule 11 is denied.