# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-996

DAN S. COLLINS, CPL & ASSOCIATES, INC., ET AL.

VERSUS

FRANK A. GODCHAUX, III, ET AL.

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, DOCKET NO. 84618
HONORABLE JULES D. EDWARDS, III, PRESIDING
**********

## SYLVIA R. COOKS
## JUDGE
**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

**REVERSED AND REMANDED.**

J. Michael Veron
Jere Jay Bice
Alonzo P. Wilson
Veron, Bice, Palermo & Wilson, LLC
P.O. Box 2125
Lake Charles, LA 70602
(337) 310-1600
COUNSEL FOR PLAINTIFFS/APPELLANTS:
        Dan S. Collins, CPL & Associates, et al.


Anthony J. Fontana
210 N. Washington Street
Abbeville, LA 70510
(337) 898-8332
COUNSEL FOR PLAINTIFFS/APPELLANTS:
        Dan S. Collins, CPL & Associates, et al.

**M. Taylor Darden**
**Matthew J. Fantaci**
**Carver, Darden, Kortezky, Tessier, Finn, Blossman & Areaux, L.L.C.**
**1100 Poydras Street, Suite 3100**
**New Orleans, LA 70163**
**(504) 585-3800**
**COUNSEL FOR DEFENDANTS/APPELLEES and THIRD PARTY PLAINTIFFS:**
      **Frank A. Godchaux, III, et al.**

**Gerald F. Slattery, Jr.**
**Emile J. Dreuil, III**
**Slattery, Marino & Roberts**
**1100 Poydras Street, Suite 1800**
**New Orleans, LA 70163**
**(504) 585-7800**
**COUNSEL FOR AMICUS CURIAE:**
      **American Association of Professional Landmen**

**COOKS, Judge.**

In this litigation between an independent petroleum landman and landowners of a mineral field, the trial court granted the landowners' motion for summary judgment alleging the landman engaged in the unauthorized practice of law in carrying out the duties set forth in a series of mineral consulting agreements between the parties. The landowners' reconventional demand seeking return of all monies paid in the past under the mineral consulting agreements to the landman was dismissed on the grounds that the landowners had "unclean hands" in crafting the mineral consulting agreements. Lastly, the trial court granted the landowners' motion *in limine* seeking to exclude any evidence pertaining to damages suffered due to breach of the contract between the parties. Both parties have appealed the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

Dan Collins has worked as a professional landman for over thirty years. He is a Certified Professional Landman as determined by the American Association of Professional Landmen (AAPL). In 1994, Collins entered into a Mineral Consulting Agreement (hereafter MCA) with Frank and Charles Godchaux to manage their mineral interests in the Live Oak Field located in Vermilion Parish, Louisiana. There were a series of MCAs which extended over an approximate ten-year period maintaining the parties' relationship. The MCAs all set forth that Collins would receive no remuneration unless his efforts resulted in some profit for the Godchauxs. Collins worked on a contingency fee basis, and if he were successful in securing a profit for the Godchauxs, Collins would receive a fee consisting of a royalty interest and a percentage of any cash payments they received.

Prior to signing the initial MCA, it was reviewed by the Godchauxs' attorney, Silas Coper. It should be noted that Mr. Cooper was counsel of record on

both Louisiana Supreme Court cases which have examined the issue of landmen and the unauthorized practice of law, *Placid Oil Co. v. Taylor*, 306 So.2d 664 (La. 1975) and *Crawford v. Deshotels*, 359 So.2d 118 (La. 1978). It cannot be reasonably suggested here that Mr. Cooper was not familiar with the issues involved with landmen and the unauthorized practice of law and whether the MCA he reviewed contractually obligated the parties to perform prohibited activities.

In 2004, after Collins had worked the Live Oak Field for ten years under the MCAs, the Godchauxs entered into a settlement with the lessees of the Live Oak Field, which resulted in five new mineral leases and the amendment of a lease that had been executed by the Godchauxs in 1952. As a result of the new leases and amendment, the Godchauxs received significantly more favorable terms than they previously had, including significant increases in royalties payable on certain production.

Under the MCA, Collins contended he was entitled to a 2% overriding royalty interest in all of the new leases and amendment. The Godchauxs disagreed, believing Collins was only entitled to a 1% override on the new leases and nothing on the amendment to the 1952 lease. Based on their belief, the Godchauxs caused assignments of a 1% overriding royalty interest to be drafted on the five new leases that resulted from the 2004 settlement. The Godchauxs did not prepare any assignment for the amendment to the 1952 lease, asserting the 1994 MCA specifically excluded the 1952 lease from its terms and conditions. Thereafter, the Godchauxs executed each assignment and filed them for registry in the official records.

On February 21, 2006, Collins filed suit seeking to compel the Godchauxs to pay him the 2% overriding royalty interest he claimed he was due as a result of the 2004 settlement. Collins also claimed he was entitled to a 2% overriding royalty interest in the amendment to the 1952 lease. Originally, the Godchauxs answered

the suit claiming the contract with Collins should be reformed to eliminate their obligation to pay the royalties owed because they signed it in error.

In March, 2008, the Godchauxs reconvened against Collins seeking to have the MCAs declared null and void on the grounds that they authorized Collins, a non-lawyer, to engage in the unauthorized practice of law; and that, in performing his work under the MCAs, Collins did engage in the unauthorized practice of law. Based upon its belief that the MCAs were null and void, which under La.Civ.Code art. 2033 means they are "deemed never to have existed," the Godchauxs sought to be restored to the situation that existed before the contracts were made, which would require Collins to return all royalty assignments and monies previously received by him.

On February 14, 2011, the Godchauxs filed a motion for partial summary judgment in support of their reconventional demand against Collins, based on its assertion that Collins' work under the MCAs was null and void because it constituted an "unlawful attempt to engage a non-lawyer in the unauthorized practice of law."

On March 9, 2011, Collins filed a cross-motion for summary judgment seeking the recovery of overriding royalties under the MCAs and dismissal of the Godchauxs' reconventional demand for return of the previously made payments on the grounds the contract did not call for the unlawful practice of law.

The Godchauxs, in the event the issue of Collins' damages regarding the Godchauxs' alleged breach of the MCAs proceeds to trial, filed a motion *in limine* seeking to exclude testimony Collins intended to introduce from principals of an oil company that it would have purchased Collins' royalty interest for approximately $5 million. They asserted this testimony was mere speculation and there was never a bona fide offer to purchase Collins' royalty interest.

The trial court granted in part the Godchauxs' partial summary judgment, dismissing Collins' claim for recovery of royalties on the grounds that the agreement was void because Collins was "in fact, engaged in the unlawful practice of law." However, the trial court also held that Collins did not have to return prior monies paid because the Godchauxs had "unclean hands" because they crafted the MCAs and participated with Collins in the unlawful conduct. Based on its finding that Collins engaged in the unlawful practice of law, the trial court denied Collins' cross-motion for summary judgment. The trial court also granted the Godchauxs' motion *in limine*, holding that, if this Court reverses the grant of summary judgment that Collins engaged in the unauthorized practice of law and remands the matter for trial on the issue of damages, Collins will not be allowed to present any testimony as to the possible sale of the disputed royalty interest to a third party.

Both Collins and the Godchauxs timely filed petitions for devolutive appeal, which the trial court granted.

## ANALYSIS

An appellate court reviews a grant of summary judgment *de novo*, applying the same standards as would a trial court. *Schroeder v. Bd. of Sup'rs. of La. State Univ.*, 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966 provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential facts of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be

able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie*, 98-2821 (La.9/8/99), 744 So.2d 606.

## I. *Unauthorized Practice of Law*

Louisiana prohibits a non-licensed attorney from practicing law or from rendering legal services. La.R.S. 37:213. The "practice of law' is defined in La.R.S. 37:212 to include:

A. The practice of law means and includes:

(1) In a representative capacity, the appearance as an advocate, or the drawing of papers, pleadings or documents, or the performance of any act in connection with pending or prospective proceedings before any court of record in this state; or

(2) For a consideration, reward, or pecuniary benefit, present or anticipated, direct or indirect;

(a) The advising or counseling of another as to secular law;

(b) In behalf of another, the drawing or procuring, or the assisting in the drawing or procuring of a paper, document, or instrument affecting or relating to secular rights;

(c) The doing of any act, in behalf of another, tending to obtain or secure for the other the prevention or the redress of a wrong or the enforcement or establishment of a right; or

(d) Certifying or giving opinions as to title to immovable property or any interest therein or as to the rank or priority or validity of a lien, privilege or mortgage as well as the preparation of acts of sale, mortgages, credit sales or any acts or other documents passing titles to or encumbering immovable property.

The Godchauxs alleged the various MCAs required Collins to engage in acts which required the practice of law. Specifically, they asserted these acts included advising the Godchauxs as to their legal rights in various matters, negotiating damage claims and releases for the Godchauxs' property, asserting the legal rights of the Godchauxs, engaging in settlement negotiations on behalf of the Godchauxs on a contingency fee basis, and furnishing attorneys.

The Louisiana Supreme Court, in two cases over thirty years old, addressed the issue of the unauthorized practice of law by landmen. In *Placid Oil*, 306 So.2d

5

666 the court first addressed allegations involving a landman allegedly engaging in the unauthorized practice of law. In *Placid Oil*, the landman, who was a non-lawyer, entered into a contract with the heirs of former landowners concerning title to a certain piece of property. The landman agreed "to remove all clouds from the said titles, and [agreed] to use all diligence in his efforts to do so, AT HIS SOLE EXPENSE, and the decision as to the method of procedure, and whether or not to institute litigation shall be left entirely to the discretion of [the landman]. . ." *Id.* at FN1. In return, the landman was to receive mineral rights to the property. A subsequent mineral lessee claimed that the transfer of the mineral rights to the landman was an absolute nullity because it was consideration for the unauthorized practice of law. The supreme court rejected that argument, stating:

> . . . no evidence at all was introduced to show that, by reason of the contract, [the landman] had actually performed any prohibited legal services. Nor can we say, for instance, that services performed by removing clouds from titles, such as locating heirs or having adverse claimants sign quitclaims prepared by lawyers, amount by themselves to the practice of law, so as to exclude non-lawyers from the useful functions historically performed by landmen.

*Id.*, at 666.

A few years later in *Crawford*, 359 So.2d 118, the Louisiana Supreme Court once again addressed a claim that a landman had engaged in the unauthorized practice of law. In that case, Crawford, an independent landman, contacted an heir after researching the title to a tract of land and discovering that the heir had been denied her legitime of an interest in the property. Upon contacting the heir, Crawford entered into an agreement with the heir whereby, in consideration for the necessary work and expense required for perfecting the title, the heir would convey a one-half mineral interest to Crawford. To that end, Crawford secured quitclaim deeds, which he personally prepared, conveying to the heir her interest in the property.

6

The heir later sued Crawford for dissolution of the contract, contending Crawford's actions constituted the unauthorized practice of law in violation of La.R.S. 37:213. In finding in favor of Crawford, the Louisiana Supreme Court quoted from the appellate court opinion, which relied on the opinion in *Placid Oil*, and read, in pertinent part:

> Mr. Crawford agreed to undertake "the necessary work and expense in perfecting the title, of whatever undivided interest grantor may have legal title to, into grantor and causing the said title to grantor's interest to be properly reflected in the Conveyance Records of the Parish of Vermilion." The evidence shows that pursuant to this agreement Crawford obtained quitclaim deeds, which he personally prepared, conveying to Mrs. McDaniel an undivided one-sixth interest in the property. It was not necessary for Mr. Crawford to employ an attorney or to file any proceedings in court.
>
> A very similar issue was presented in the recent case of *Placid Oil Company v. Taylor*, 306 So.2d 664 (La.S.Ct.1975) where a landman, a non-lawyer, agreed to furnish services to remove clouds from the titles of landowners in consideration of an interest in the property. The court found that regardless of whether the services to be performed by the landman under the contract constituted the practice of law, the evidence did not show that the services actually performed were prohibited legal services. The court stated:
>
>> "Nor can we say, for instance, that services performed by removing clouds from titles, such as locating heirs or having adverse claimants sign quitclaims prepared by lawyers, amount by themselves to the practice of law, so as to exclude non-lawyers from the useful functions historically performed by landmen."
>
> In its decision in *Placid*, the Supreme Court cited with approval the case of *Strange v. Robinson*, La.App., 189 So. 338 (1939) which involved facts very similar to the present case. The court in *Robinson* held that the services performed by the landman did not constitute the prohibited practice of law. 351 So.2d at 297-98.
>
> Under these authorities, the services performed by Crawford in the present case clearly did not constitute the prohibited practice of law. 351 So.2d at 297-98.

The supreme court concluded that Crawford "did nothing more than to perform the services historically rendered by landman." *Id*. at 121.

Significantly, the *Crawford* court cited with approval a definition of the term landman in its opinion. It defined a "landman" as "[a]n employee of an oil

7

company whose primary duties are the management of the company's relations with its landowners. Such duties ***include*** the securing of oil and gas leases, lease amendments, pooling and unitization agreements and instruments necessary for curing title defects from landowners." *Crawford*, 359 So.2d at FN1 (emphasis added).

It appears the trial court interpreted the definition as setting forth an *exclusive* list of activities a landman could legally perform. We do not agree. The word "include" clearly indicates the activities set forth in the definition are not exclusive. The facts of *Crawford* state the landman undertook "the necessary work and expense in perfecting the title" and personally prepared the quitclaim deeds. *Id.* at 121. Moreover, as noted by Collins, the *Crawford* court's approval of *Placid Oil* and *Strange v. Robinson*, La.App., 189 So. 338 (1939), cases in which the landmen's activities were not limited to the activities listed in the *Crawford* definition of landman, indicates the Court did not consider that listing of activities as exclusive. Instead, it is clear the supreme court intended to exempt all activities historically performed by landmen from the definition of the unauthorized practice of law.

While there have been no cases in Louisiana since *Crawford* which have examined the specific issue of whether a landman has engaged in the unauthorized practice of law, the jurisprudence is replete with cases where landmen have engaged in a myriad of duties beyond that set forth in the definition provided in *Crawford*.

In *Marin v. Exxon Mobil Corp.*, 09-2368, 09-2371 (La. 10/19/10), 48 So.3d 234, a landman engaged in negotiations on his clients' behalf for site clean-up. In *Freeport-McMoran, Inc. v. Transcontinental Gas Pipe Line Corp.*, 04-31 (La.App. 1 Cir. 10/14/05), 924 So.2d 207, *writ denied*, 05-2358 (La. 3/31/06), 925 So.2d 1256, a landman participated in settlement negotiations in a take-or-pay dispute.

8

In *Denbury Onshore, L.L.C. v. Pucheu*, 08-1210 (La.App. 3 Cir. 3/11/09), 6 So.3d 386, one landman participated in negotiating an escrow agreement and another landman participated in negotiations on a mineral lease. *Adams v. JPD Energy Inc.*, 45,420 (La.App. 2 Cir. 8/11/10), 46 So.3d 751, *writ denied*, 10-2052 (La.11/12/10), 49 So.3d 892, involved an independent landman company which was retained to obtain mineral leases. The case of *Cree Oil Co. v. Home Ins. Co.*, 94-1219, p. 3 (La.App. 3 Cir. 3/8/95), 653 So.2d 620, 623, *writ denied*, 95-1554 (La.9/29/95), 660 So.2d 875, involved a petroleum landman who "acquired and sold oil and gas leases and put exploratory drilling deals together." In *Win Oil Co., Inc. v. UPG, Inc.*, 509 So.2d 1023 (La.App. 2 Cir.1987), a landman engaged in performing title research and rendering opinions on the ownership of mineral rights. In *St. Romain v. Midas Exploration, Inc.*, 430 So.2d 1354, 1355 (La.App. 3 Cir. 1983), a landman, "[a]fter protracted preliminary negotiations, . . . agreed to a mineral lease . . . [and] prepared [the] mineral lease." Many of these cases involve acts outside of those listed in the definition of landman provided in *Crawford*, and are examples of those acts which have been historically performed by landmen.

Whether a particular activity is one that has been historically performed by landmen is a question of fact. Collins avers that the only competent summary judgment evidence on this issue was presented by him in his statement of uncontested material facts. He asserted all the activities performed by him in representing the Godchauxs were activities historically performed by landmen. No evidence to contradict this was presented by the Godchauxs, and counsel for the Godchauxs acknowledged below that "there are no disputed issues of fact."

Moreover, we find unpersuasive the examples provided by the Godchauxs as to Collins' supposed acts of "practicing law." The Godchauxs argue a memo written by Collins on March 20, 2003 constituted the unauthorized practice of law. In this memo, Collins recommended that the Godchauxs hire a lawyer to pursue

9

issues identified by him and ultimately resolved by the 2004 settlement. In the memo Collins listed potential lease violations and noted his concern that other oil companies might attempt to avoid property clean-up by transferring their operations to smaller companies with limited resources. Collins suggested to the Godchauxs that these factors indicated it was time to hire an attorney to protect themselves. This, while arguably good advice, falls woefully short of the practice of law. As Collins notes in his brief, to liken the writing of this memo to practicing law, would be akin to believing that advising a friend he looks ill and should see a doctor is engaging in the practice of medicine.

The Godchauxs also argue a March 1, 2002 e-mail from Collins to the daughter of Frank Godchaux, requesting photographs of neighboring land to aid him in examining possible erosion, damage and land loss because he believed a prescription issue could be looming with former operators. The Godchauxs argue this request for photographs constitutes the practice of law. We disagree, and note Collins was simply asking for photographs and did not give any advice relating to prescription.

The Godchauxs also alleged the MCAs called for the unauthorized practice of law because they provided for Collins to be compensated on a contingency basis. To find merit in this assertion, we would have to find any contract, such as a contract with a realtor, which calls for payment based on a contingency arrangement is void because it constitutes the unauthorized practice of law. This ignores the fact that the supreme court in *Crawford* upheld a contingency fee contract between the landowner and landman. Such a fee arrangement is standard practice in contracts between landowners and landmen.

The Godchauxs have failed to provide any evidence or jurisprudence indicating that any of the services provided by Collins under the MCAs fell outside the scope of services historically provided by landmen. To the contrary, Collins

10

provided affidavits of another landman with over thirty years experience and an official with the Louisiana Department of Natural Resources who supervised landmen, who averred that the services Collins provided under the MCAs were those historically provided by landmen. Although the Godchauxs refer to these affidavits as "self-serving," they provide no valid legal basis to disregard them. Collins also provided numerous cases, cited above, wherein landmen performed many of the very activities the Godchauxs alleged constituted the unauthorized practice of law.

The Godchauxs attempt to argue independent landmen, like Collins, are different from landmen employed by an oil company, and are more limited in the acts they can perform. They argue this distinction is relevant because persons are entitled to attend to their own business, and as a legal fiction, a corporation can act only through its employees; thus, corporate employees can practice law on behalf of the corporation. The Godchauxs cite only one case in support of this argument, *Title Guaranty Co. v. Denver Bar Ass'n*, 312 P.2d 1011 (Colo. 1957), a Colorado case over fifty years old, which does not specifically reference landmen. We note the Godchauxs attempt to summarily dismiss references to *current* Texas and Oklahoma law provided by the AAPL in its amicus brief, finding what "those states choose to do regarding the tension between landman activities and their respective statutes prohibiting the unlicensed practice of law is totally irrelevant in this proceeding." The suggestion that we should do the same is disingenuous at best, particularly considering the Godchauxs' earlier insistence that this court should follow a 55 year old case in upholding their position.

In any event, there has been nothing presented to support the position that company landmen provide materially different services than those rendered by independent landmen. We find unpersuasive the Godchauxs' argument that what

11

services are permissible for a company landman to perform can rise to the level of a crime when performed by an independent landman, such as Collins.

In conclusion, the Louisiana Supreme Court addressed the issue raised by the Godchauxs over three decades ago in *Placid Oil* and *Crawford.* The court in those cases made it clear that activities historically performed by landmen are exempted from the definition of the unauthorized practice of law. As noted above, the Godchauxs failed to present evidence to contradict Collins' evidence that all the activities performed under the MCAs were activities historically performed by landmen.

We do not find the stipulated facts, evidence, and other responses in the record presented below in support of the motion for summary judgment filed by the Godchauxs were sufficient to establish as a matter of law that Collins engaged in the unauthorized practice of law. Thus, the trial court erred in granting the Godchauxs' motion for summary judgment and we reverse that decision.

## II. *Dismissal of the Godchauxs' Reconventional Demand*

The Godchauxs filed a Reconventional Demand against Collins seeking a return of all royalty assignments and monies previously received by him for services performed under the MCAs. The Reconventional Demand was based on the alleged nullity of the MCAs. The trial court held the Godchauxs could "not recover on the Reconventional Demand on the grounds that they have unclean hands in procuring Collins to commit a crime."

We find the trial court's dismissal of the Godchauxs' reconventional demand was premature at this point. There were grounds relied upon by the Godchauxs in their reconventional demand other than the assertion that Collins engaged in the unauthorized practice of law. Therefore, we reverse the dismissal of the reconventional demand and remand for trial on that issue.

### III. *Grant of the Motion in Limine*

In his petition, Collins asserted a damage claim against the Godchauxs that they breached the MCA by preventing him from selling his overriding royalty interest to a willing purchaser, D&D Cajun Ventures, LLC (hereafter D&D). Collins intended to introduce testimony from principals of D&D that the company would have purchased Collins' overriding royalty interest for approximately $5 million. The Godchauxs filed a motion *in limine* in the trial court seeking to exclude this evidence should the issue of Collins' damages go to the jury. The trial court granted the motion *in limine*, holding that, if this Court reverses the grant of summary judgment that Collins engaged in the unauthorized practice of law and remands the matter for trial on damages, Collins will not be allowed to present any evidence to show the profits he was denied as a result of the Godchauxs' breach. The trial court indicated such evidence would just be "speculation."

Collins maintains under the provisions of his agreement with the Godchauxs, he was entitled to receive a 2% royalty interest on certain oil and gas production. According to Collins, that "royalty interest could have been (and would have been) sold to D&D Cajun Ventures, LLC for $5 million." Collins contends under the law this is the appropriate measure of the damages he suffered due to the Godchauxs' refusal to transfer the 2% royalty interest.

Collins took the depositions of Don Fisher and Daniel Adams, who were principals of D&D, to establish D&D was interested in acquiring mineral interests in the Live Oak Field, and that had the Godchauxs transferred to Collins the agreed upon 2% royalty interest, D&D would be interested in purchasing it for approximately $5 million.

The Godchauxs argue that no actual offer, written or otherwise, was ever made to purchase Collins' royalty interest. The Godchauxs characterize the "gist of D&D's testimony, through one of its principals, was only that *if* Collins had

13

offered to sell the 2% royalty that he claims he is owed, D&D *would have* been willing and able to purchase it for between $4.8 and $5.2 million dollars."

Louisiana Civil Code Article 1995 states "[d]amages are measured by the loss sustained by the obligee and *the profit of which he has been deprived*." (Emphasis added.) As we noted in *Amoco Production Co. v. Texaco, Inc.*, 02-240, p. 13 (La.App. 3 Cir. 1/29/03), 838 So.2d 821, 836, *writs denied*, 03-1102, 03-1104 (La. 6/6/03), 845 So.2d 1096, "[t]he plain language of this article requires that damages include whatever profit the plaintiff may have lost due to the inaction of the defendant." The Louisiana Supreme Court stated in *Gibbs Const. Co., Inc. v. Thomas*, 500 So.2d 764, 770 (La.1987), "t]he proper measure of damages ... is ... the amount necessary to place [the plaintiff] in the same position he would have been in had [the defendant] completely fulfilled [its obligation]."

The Godchauxs argue the law is "well-settled that offers to purchase or sell are not admissible as evidence for purposes of proving the property's value." However, as Collins notes, the cases cited by the Godchauxs deal with the proof of the value of the property. Collins is not attempting to demonstrate the value of the 2% royalty interest he was owed by the Godchauxs, but rather the amount he lost as a direct result of the Godchauxs' breach of contract, i.e., the sum that will place him in the same position as if the obligation had been fulfilled.

We find it unremarkable that no actual offer was ever made to buy or sell the disputed royalty interest. Because the Godchauxs refused to transfer the royalty interest to Collins, no actual offer could be made because Collins never possessed the royalty interest. It would, therefore, be an injustice to prevent the jury from hearing this evidence solely because no bona fide offer was made to buy and/or sell the disputed royalty interest.

Much of the Godchauxs' argument that the jury should not be allowed to hear this evidence go to the credibility of the evidence rather than its admissibility.

14

Determining the credibility of the witnesses' testimony is solely the province of the factfinder, and is not a factor in its admissibility.

For the above reasons, we find the trial court erred in granting the motion *in limine* excluding the testimony of Don Fisher, Daniel Adams and D&D Cajun Ventures from the jury.

**DECREE**

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of the Godchauxs is reversed. We reverse the trial court's dismissal of the Godchauxs' Reconventional Demand and remand for trial on that issue. Lastly, we reverse the trial court's grant of the Godchauxs' motion in limine, and instruct the trial court on remand to allow testimony as to D&D Cajun Ventures' willingness to purchase the disputed royalty interest. All costs of this appeal are assessed to Defendants, Frank and Charles Godchaux.

**REVERSED AND REMANDED.**